THE STATE OF OHIO, APPELLANT, *v.* DAILEY, APPELLEE.

[Cite as State *v.* Dailey (1990), 53 Ohio St. 3d 88.]

(No. 89-1174—Submitted May 15, 1990 — Decided August 8, 1990.)

*C. Keith Plummer,* prosecuting attorney, for appellant.

*Gerald L. Jones,* for appellee.

MOYER, C.J. The first question presented for our consideration is whether the warnings given to the defendant by the Guernsey County Chief Deputy Sheriff comply with the requirement of *Miranda* v. *Arizona* (1966), 384 U.S. 436.

Defendant contends that *Miranda* requires an unequivocal statement to a suspect that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. In essence, defendant argues that the *Miranda* warning given him was inadequate because it failed to make reference to appointment of counsel.

For the reasons that follow, we conclude that defendant's contention is without merit.

In *Miranda, supra,* the court indicated that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. The court indicated that in the absence of *other effective measures* the following procedures to safeguard the Fifth Amendment privilege must be observed:

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

The United States Supreme Court has often indicated that there is no rigid rule requiring that the content of the *Miranda* warnings given to an accused prior to police interrogations be a virtual incantation of the precise language contained in the *Miranda* opinion. See *California* v. *Prysock* (1981), 453 U.S. 355; *Duckworth* v. *Eagan* (1989), 492 U.S. ___, 106 L. Ed. 2d 166, 176-177, 109 S. Ct. 2875, 2879. The warnings required by *Miranda* are necessary in the absence of any other effective equivalent. *Miranda, supra,* at 476; *Prysock, supra,* at 359-360; *Duckworth, supra,* at ___, 106 L. Ed. 2d at 176-177, 109 S. Ct. at 2879. They are simply required to convey to a suspect his rights and are not themselves rights protected by the Constitution. *Duckworth, supra,* at ___, 106 L. Ed. 2d at 177, 109 S. Ct. at 2880. They are measures to insure that the right against compulsory self-incrimination is protected. *Id.* Hence, a reviewing court need not examine the warnings as if construing a will or defining the terms of an easement. *Id.*

In *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 37-41, 3 O.O. 3d 18, 21-24, 358 N.E. 2d 1051, 1057-1059, vacated in part (1978), 438 U.S. 911, we rejected the defendant's argument that the *Miranda* warnings given to him were inadequate because the police officer never explicitly asked him whether he wanted an attorney. As indicated in *Moran* v. *Burbine* (1986), 475 U.S. 412, 420, the warnings required by *Miranda* are satisfied where "prior to the initiation of questioning, * * * [the police] must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present * * * if [he] so desires.' " In *Duckworth, supra,* at

____, 106 L. Ed. 2d at 177, 109 S. Ct. at 2880, the court approved, as touching all of the bases required by *Miranda,* warnings informing a suspect "that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to speak to an attorney before and during questioning, that he had 'this right to the advice and presence of a lawyer even if [he could] not afford to hire one,' and that he had the 'right to stop answering at any time until [he] talked to a lawyer.' "

Defendant does not claim that he failed to understand the warnings read to him. Instead he contends that the warnings are inadequate because they do not explicitly make reference to "appointment of counsel." The warnings read to the defendant clearly apprised him of the state's intention to use his statement to secure a conviction, informed him of his right not to answer questions and to have counsel present even if he could not afford to hire one. The warnings are no different from those approved by the court in *Duckworth.* We therefore conclude that the warnings given to the defendant were adequate.

We next determine whether defendant's statement, made after adequate *Miranda* warnings were given, was made voluntarily even in the absence of police coercion.

The trial court indicated that defendant's statement was not made voluntarily because he was eighteen years old, had an I.Q. of 71 and was subjected to in-custody interrogation.

In *Miranda* the court recognized that custodial interrogations by their very nature generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda, supra,* at 467; *Moran, supra,* at 420.

To combat this inherent compulsion and thereby protect a suspect's Fifth Amendment privilege against self-incrimination, the Supreme Court has held that a suspect may effectively waive the rights conveyed in the *Miranda* warnings only if the waiver is made voluntarily, knowingly and intelligently. *Miranda, supra,* at 444, 475.

The inquiry whether a waiver is coerced has two distinct dimensions. "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran, supra,* at 421; *Colorado* v. *Spring* (1987), 479 U.S. 564, 573. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Moran, supra,* at 422-423.

A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. *Colorado* v. *Spring, supra,* at 574. See, also, *State* v. *Black* (1976), 48 Ohio St. 2d 262, 2 O.O. 3d 422, 358 N.E. 2d 551, paragraph four of the syllabus, vacated in part (1978), 438 U.S. 910. Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which *Miranda*

was based. *Colorado* v. *Connelly* (1986), 479 U.S. 157, 170.

In *Colorado* v. *Connelly, supra,* the Colorado Supreme Court, relying on evidence that the defendant was suffering from chronic schizophrenia and was in a psychotic state at least as of the day before his confession, held that the United States Constitution requires that his confession be suppressed because the defendant's mental state at the time of his confession interfered with his "rational intellect" and "free will." *Id.* at 159, 161. The United States Supreme Court reversed and held that while a defendant's "mental condition [may be a] * * * significant factor in the 'voluntariness' calculus[,] * * * [it] does not justify a conclusion that * * * [the] mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Colorado* v. *Connelly, supra,* at 164. See, also, *Blackburn* v. *Alabama* (1960), 361 U.S. 199; *Townsend* v. *Sain* (1963), 372 U.S. 293. The Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion. The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching not on "free choice" in any broader sense of the word. See *Moran* v. *Burbine, supra,* at 421.

The record in this case is devoid of any suggestion that the chief deputy resorted to physical or psychological pressure to elicit a statement from defendant. In the absence of any police coercion resulting in defendant's confession, the confession was voluntarily made. His age and low I.Q., standing alone, do not negate the voluntariness of his statement.

There is also no doubt that defendant's waiver of his Fifth Amendment privilege was knowingly and intelligently made.

In *State* v. *Edwards, supra,* a situation with circumstances similar to those herein, we indicated that the defendant, a twenty-one-year-old high school graduate with a low I.Q. and a reading capacity at second grade level, knowingly and intelligently waived his rights when he indicated that he understood his rights as read to him by the police officer. *Id.* at 37-41, 3 O.O. 3d at 21-24, 358 N.E. 2d at 1057-1059.

Defendant Dailey indicated that he understood his rights after they were read to him by the chief deputy. "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of his Fifth Amendment privilege." *Colorado* v. *Spring, supra,* at 574. Dailey was very much aware of the accusations against him as reflected by his request that Ruess not be present while he made a statement to the chief deputy.

For the foregoing reasons we hold that the defendant's confession was voluntarily made.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

HOLMES, DOUGLAS and RESNICK, JJ., concur.

SWEENEY, WRIGHT and H. BROWN, JJ., dissent.

WRIGHT, J., dissenting. While I agree with the majority that the *Miranda* warning was not defective in this case, I must respectfully dissent

from the judgment reversing the trial court's determination that appellee Edward Dailey's statement was not made voluntarily.

I would defer to the determination of the trial court, which had the opportunity to observe the witnesses in person and evaluate their testimony. It was the prerogative of the trial judge as the trier of fact to decide whether the state had met its burden of proving that the defendant's statement was voluntarily given. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court of appeals declined to substitute its judgment for that of the trial court, and so should we. Therefore, I would affirm the judgment of the court of appeals.

SWEENEY and H. BROWN, JJ., concur in the foregoing dissenting opinion.