The STATE of Ohio, Appellee,

v.

PERKINS, Appellant.

[Cite as *State v. Perkins* (1994), 93 Ohio App.3d 672.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64714.

Decided March 16, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Michael A. Bednar,* Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.,* for appellant.

---

PATTON, Presiding Judge.

Defendant-appellant Dwane Perkins appeals his convictions for kidnapping (R.C. 2905.01) and robbery (R.C. 2911.02) with prior aggravated felony specifications. Following a jury trial, appellant was sentenced to consecutive terms of incarceration of fifteen to twenty-five years on the kidnapping charge and twelve to fifteen years on the robbery charge.

At trial, the state presented the testimony of Lori Nichols, the victim of the charged offenses. Nichols testified that she was the food service money room manager at Thistledown Racetrack. Her duties included depositing cash receipts into a safe. On April 4, 1992, at approximately 7:35 p.m., Nichols went to the Randall Park Mall after completing her work duties. Upon entering Kaufmann's Department Store, she encountered the appellant, whom she had known as a previous employee at Thistledown. The two engaged in small talk and, at appellant's request, Nichols reluctantly agreed to give him a ride home.

After purchasing a birthday gift at Kaufmann's, Nichols and appellant entered her car. As they were leaving the mall parking area, appellant briefly exited the car to make a phone call. Upon his return, appellant indicated that he lived five minutes down Miles Road. After driving for approximately twenty minutes, the appellant directed Nichols to pull into Luke Easter Park. He indicated that this would enable him to run through the field to his house.

Nichols testified that when she stopped the car the appellant grabbed her around the neck, told her he hated her boss, stated he needed money, and demanded the combination to the Thistledown safe. Appellant then proceeded to go through her purse, ripping out two pages from her personal phone book in the process. He also obtained a pencil from the purse. Nichols then revealed the combination to the safe and he transcribed it onto the paper. After obtaining the combination, appellant secured the victim's hands together by binding her wrists with packaging tape.

Before appellant could get out of the car a police cruiser on routine patrol approached. Appellant directed Nichols to drive the car down the street. Since her hands were bound appellant steered the car while Nichols operated the brakes and accelerator.

Officer Brown of the Cleveland Police Department testified that he and his partner were on routine patrol when they observed a stopped vehicle. As they

approached, the vehicle pulled away and passed the police cruiser. Officer Brown testified that he observed a scared-looking woman behind the wheel. As a result, the police turned their cruiser around and followed. The officers pulled the car over when the vehicle failed to make a complete stop at a red light and failed to signal a right turn. The police approached and observed appellant attempting to cut the tape from the victim's wrists with car keys.

Appellant was removed from the car and was placed in the back of the police cruiser. After obtaining information from Nichols, the officers then removed appellant from the police cruiser, handcuffed him, and placed him under arrest. Prior to placing him back into the cruiser, police discovered that the appellant had discarded rubber gloves and pages of the victim's phone book under the seats of the police cruiser.

The defense presented the testimony of Joyce Perkins, the mother of the appellant. She testified that her son had a good reputation in the community.

The defense also presented the testimony of Bridgette Williams. She testified that she had known the appellant since January 1992 and had briefly dated him. She further testified that she observed the appellant with a young white lady with long blonde hair on the evening of April 4, 1992, at Herb's Bar on Miles Road.

Isabelle Walczak testified that the appellant was the father of her child. She further testified that in her experience the appellant was a wonderful man.

The appellant testified on his own behalf. He revealed that he met Lori Nichols at Thistledown prior to his discharge from employment. According to the appellant, he and Nichols would periodically meet at Randall Mall prior to engaging in sexual activities. They also allegedly engaged in sexual activities at work. On one occasion, he recalled that Nichols bought him a sweatshirt while she was in Arizona on vacation.

Appellant further testified that on April 4, 1992, he went to Randall Park Mall after making arrangements to meet Nichols. After leaving the mall together they stopped at Herb's Bar on Miles Road for a drink. According to appellant, Nichols voluntarily gave him the combination to the safe while they were at the bar. They left the bar after finishing their drinks and proceeded to Luke Easter Park where they began to become intimate. Appellant testified that he and Nichols had previously engaged in bondage activities during the course of their sexual relationship. To facilitate these activities, appellant testified that he went into the trunk, where he discovered tape. He used the tape to secure the wrists of Nichols. At that time, the police approached and ultimately stopped the car. According to the appellant, he did not take anything from Nichols, nor did he forcibly wrap the tape around her wrists.

Appellant's first assignment of error provides:

"I.   The defendant was denied due process of law and a fair tribunal when the court improperly questioned the defendant and defense witnesses in a partial manner."

Appellant argues that the trial court's interrogation of defense witnesses during trial violated his right to a fair trial.   Appellant's argument lacks merit.

Appellant directs our attention to two instances during trial wherein the court questioned defense witness Bridgette Williams and the appellant.

During the direct examination of Bridgette Williams, she testified that she had observed the appellant with an attractive white woman at Herb's Bar on the evening of the alleged offenses.   Following cross-examination by the state and redirect examination by defense counsel, the court proceeded to question Williams as follows:

"THE COURT:  When is the last time you talked to him [appellant]?

"THE WITNESS:  Prior to today?

"THE COURT:  Prior to today.

"THE WITNESS:  Yesterday.

"THE COURT:  Yesterday?

"THE WITNESS:  Yes.

"THE COURT:  You called him?

"THE WITNESS:  Yes.

"THE COURT:  When did you talk to him prior to that?

"THE WITNESS:  Maybe three weeks ago.

"THE COURT:  He has called you since April the 4th, how many times?

"THE WITNESS:  Maybe once or twice.   Very few times that I have talked to him since this happened.

"MR. JENKINS:  May I follow-up?

"THE COURT:  Go ahead.

" * * *

"THE COURT:  But you talked to him two days ago or yesterday?

"THE WITNESS:  Yes.

"THE COURT:  He told you to come down here to testify?

"THE WITNESS:  No.   Mr. Jenkins did.

"THE COURT:  Did you ever tell the police what you're telling us here today?

"THE WITNESS:  No, I did not.

"THE COURT: All right. You may step down."

In addition, the record reflects that the court questioned the appellant in the following manner after redirect examination by defense counsel:

"THE COURT: There isn't any doubt that you had those things in your possession, right?

"THE WITNESS: Yes, sir.

"THE COURT: And that you had the combination to the safe and you wrote it down and that was in your possession?

"THE WITNESS: Yes.

"THE COURT: Was it your intention to eventually rob the safe?

"THE WITNESS: No.

"THE COURT: You intended to take some money out of the safe?

"THE WITNESS: Yes, money.

"THE COURT: You were going to take some money and you don't call that robbery, or you just call it stealing?

"THE WITNESS: It was one of those periods.

"THE COURT: Why would you be writing the combination down if you didn't intend to open it?

"THE WITNESS: At the time she did have her keys to go through the door, and if you—

"THE COURT: If you didn't intend to open it in some future date, why did you write it down?

"THE WITNESS: Because when she came to me and told me we can do this, I explained to her that we can not. I didn't work there. I didn't have the money to help her replace it.

"I was bullshitting when I asked her for the combination, and she wrote it down.

"THE COURT: And you wrote it down with the intention of taking—going into that safe to take some money?

"THE WITNESS: I did not, sir.

"THE COURT: When you parked the car, if you say you took the keys out and went to the trunk just to find some tape, is that right?

"THE WITNESS: I said I went to the trunk to see what was in there and the tape was in there.

"THE COURT: What were you looking for?

"THE WITNESS: Anything, a cloth.

"THE COURT: What?

"THE WITNESS: A cloth in the car. Normally you have a rag.

"THE COURT: You were looking for a rag?

"THE WITNESS: Normally in the car you have a rag or something.

"THE COURT: All right. You may step down.

" * * *

"MR. JENKINS: I object to the Court asking questions giving the inclination that my guy is convicted before he had a fair trial here, Judge."

■ It is well established that a trial judge must at all times remain impartial and refrain from comments which might influence the jury. *State v. Boyd* (1989), 63 Ohio App.3d 790, 794, 580 N.E.2d 443, 445. Paragraph three of the syllabus in *State ex rel. Wise v. Chand* (1970), 21 Ohio St.2d 113, 50 O.O.2d 322, 256 N.E.2d 613 is instructive. It provides:

"In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness."

Furthermore, in *State v. Kay* (1967), 12 Ohio App.2d 38, 49, 41 O.O.2d 91, 98, 230 N.E.2d 652, 660, this court stated:

"Statements made by a trial judge during the progress of a trial and within hearing of the jury are of the same effect as though embodied in the charge to the jury, and, where such remarks or questioning may lend themselves to being interpreted as an opinion on the part of the judge as to the credibility of witnesses or of a defendant or an opinion on his part as to the facts of the case, prejudicial error results. * * *"

■ Initially, we will address the trial court's examination of Bridgette Williams. The record reveals that trial counsel for appellant failed to object to the trial court's examination of Williams. Thus, appellant waived any error occasioned therein absent the existence of plain error. *State v. Long* (1978), 53 Ohio St.2d 91, 96, 7 O.O.3d 178, 180–181, 372 N.E.2d 804, 807–808. Under the doctrine of plain error, a reviewing court will not reverse unless, but for the error, the outcome of the trial would have clearly been otherwise. See *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 360–361, 444 N.E.2d 1332, 1333.

After a complete review of the record, we are unable to conclude that, absent the alleged error, there is a high probability that the jury would have reached a

contrary result. Accordingly, we find that the trial court's examination of Williams did not constitute plain error.

■ Next we must address the trial court's examination of the appellant. After a careful review of the court's inquiry, we find that the trial court's questions and remarks were factual in nature and did not affect the credibility of the appellant. Moreover, review of the record demonstrates that the trial court did not demonstrate partiality in the manner or form of his questions. In fact, the record demonstrates that the court asked analogous questions of the state's witnesses in an attempt to elicit relevant facts.

Accordingly, appellant's first assignment of error is overruled.

Appellant's second and third assignments of error provide:

"II. The defendant was denied due process of law when the court overruled a motion for judgment of acquittal as to the offense of robbery because a person's thoughts cannot be the subject of the theft offense.

"III. The defendant was denied due process of law when the court refused to dismiss the kidnapping charge."

Appellant argues that the trial court erred by denying him Crim.R. 29 motions for acquittal. For the following reasons appellant's arguments lack merit.

A motion for judgment of acquittal is governed by Crim.R. 29(A), which provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

■ A court shall not order an entry of judgment of acquittal made pursuant to this rule if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

■ In addition, the trial court in ruling on a Crim.R. 29(A) motion for acquittal must view the probative evidence in a light most favorable to the state, and determine whether the state presented sufficient evidence on each of the essential elements of the offense charged. *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

■ .In his first assignment of error appellant contends that a combination to a safe does not constitute "property" as defined in R.C. 2901.01 and, thus, may not be the subject of a theft offense. We disagree.

"Property" is defined in R.C. 2901.01(J)(1) as "any property, real or personal, tangible or intangible, and any interest or license in such property." A combination to a safe which contains substantial sums of money constitutes "intangible" property as that term is used in R.C. 2901.01. Thus, appellant was not entitled to a judgment of acquittal and reasonable minds could conclude that the state presented sufficient evidence to sustain appellant's robbery conviction.

■ In his second assignment of error appellant argues that there was insufficient evidence to support his kidnapping conviction. Specifically, appellant contends that the evidence presented clearly shows that the victim was with him consensually and that he did not by force, threat, or deception remove her from the place she was found or restrain her liberty for the purpose of facilitating the commission of a felony or the flight thereafter.

R.C. 2905.01 sets forth the elements of kidnapping. It provides in relevant part:

"(A) No person, by force, threat, or deception, * * * shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:

" * * *

"(2) To facilitate the commission of any felony or flight thereafter[.]"

Reviewing the evidence in a light most favorable to the prosecution leads us to conclude that the state presented sufficient evidence on each of the essential elements of kidnapping. Specifically, the evidence showed that appellant deceived the victim into allowing him to enter her car under the pretense that he needed a ride home. The evidence further showed that appellant bound the victim's wrists, after obtaining the combination to the safe, in order to facilitate or aid his escape. Appellant's escape was interrupted only because of the unsuspected arrival of the police.

Given the testimony and evidence produced below, reasonable minds could reach different conclusions as to whether each material element of kidnapping was proven beyond a reasonable doubt. Accordingly, the trial court properly denied appellant's motion for acquittal.

Thus, appellant's second and third assignments of error are overruled.

Appellant's fourth assignment of error provides:

"IV. The defendant was denied due process of law when the court would not give any instruction of lesser included offenses of abduction and unlawful restraint."

Appellant argues that the trial court erred by failing to instruct the jury on "abduction" and "unlawful restraint" as lesser included offenses of kidnapping. However, the record reflects that appellant's counsel failed to timely request such instructions, so he cannot now complain about their omission. *State v. Butcher* (Oct. 31, 1985), Cuyahoga App. No. 49704, unreported, at 15, 1985 WL 8524. See, also, *State v. Young* (Apr. 27, 1989), Cuyahoga App. No. 55166, unreported, at 3, 1989 WL 42249. Crim.R. 30 requires that proposed instructions to the jury must be presented to the court "at the close of all the evidence or at such earlier time during the trial as the court reasonably directs." In the instant case, appellant's counsel did not request the lesser instructions until after the jury instructions were given and the jury was dismissed to commence its deliberations. Thus, the untimely request was properly denied.

Accordingly, appellant's fourth assignment of error is overruled.

Appellant's fifth and sixth assignments of error challenge portions of the jury instructions. They provide:

"V. The defendant was denied due process of law and a fair trial when the court singled out the testimony of the defendant for special consideration by the jury.

"VI. The defendant was denied due process of law when the court misinformed the jury concerning theft as it applied to this case."

Appellant argues that the trial court committed prejudicial error in the following portions of the jury instructions:

"The defendant testified as a witness in this case. And you will weigh his testimony in the same manner you weigh the testimony of other witnesses who appeared in the case. Just because he's the defendant is no reason for you to disregard or set aside his testimony. You will give his testimony the weight it is entitled to receive, taking into consideration his interest in the outcome of the case and apply to his testimony the same rules that you will apply to the testimony of all other witnesses who appeared in this case.

" * * *

"A theft offense occurs when property is knowingly obtained or controlled or control exercise [sic] over it by one who is not the owner with the purpose to deprive the owner of such property without the consent of the owner."

Review of the record reflects that appellant failed to object to the trial court's jury instructions. Thus, any error occasioned therein was waived absent the

existence of plain error. *State v. Long* (1978), 53 Ohio St.2d 91, 96, 7 O.O.3d 178, 180–181, 372 N.E.2d 804, 807–808. Under the plain error doctrine, a reviewing court will only reverse if, but for the error, "the outcome of the trial clearly would have been otherwise." *State v. Underwood* (1983), 3 Ohio St.3d 12, 14, 3 OBR 360, 361, 444 N.E.2d 1332, 1334.

Upon review of the record, including review of the court's overall charge in its relevant context, we are unable to conclude that the jury instructions prejudiced appellant. With regard to the initial challenged portion of the instruction, we note that the court gave the same substantive instruction concerning the jury's consideration of testimony given by all other witnesses. With regard to the subsequent challenged portion of the trial court's jury charge, the evidence adduced at trial did not warrant a "theft by threat" instruction pursuant to R.C. 2913.02(A)(4), as the victim testified that appellant grabbed her around the neck. Further it cannot be plausibly argued that a victim could voluntarily consent through the use of force.

We find that the jury's verdict would not have been different absent the alleged errors in the jury instructions. Accordingly, appellant's fifth and sixth assignments of error are overruled.

Appellant's seventh assignment of error provides:

"VII. The defendant was unconstitutionally subjected to multiple punishments when the crimes of kidnapping and robbery were not merged for purposes of sentencing."

Appellant initially argues that the trial court erred by imposing an aggregate minimum sentence of twenty-seven years in violation of the aggregate minimum set forth in R.C. 2929.41(E)(3).

R.C. 2929.41(E)(2) provides that consecutive terms of imprisonment shall not exceed:

"An aggregate minimum term of fifteen years * * * when the consecutive terms imposed are for felonies other than aggravated murder or murder[.]"

However, the Ohio Supreme Court has stated the following regarding the operation of R.C. 2929.41(E)(3):

"[W]here a trial court's sentence exceeds the minimum established for consecutive terms, such judgment is not the basis of a reversible error, as the terms of former R.C. 2929.41(E)(2), now (E)(3), are self-executing, automatically operating to limit the aggregate minimum sentencing term to fifteen years. * * * Therefore, there is no necessity for modification of the consecutive sentences imposed so as to limit the aggregate minimum term to fifteen years because the effects of

the statutory scheme in question are self-executing." *State v. White* (1985), 18 Ohio St.3d 340, 342, 18 OBR 381, 383–384, 481 N.E.2d 596, 591.

Thus, appellant's initial argument lacks merit.

Appellant also argues that the robbery and kidnapping were allied offenses of similar import pursuant to R.C. 2941.25 because the only restraint on the victim was merely incidental to the crime of robbery.

Initially, we note that appellant did not object at trial to his conviction and sentence on the basis that the offenses were allied offenses of similar import. In *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, the Ohio Supreme Court determined that the defendant's failure to object to the convictions or sentencing at trial resulted in a waiver of an allied offense claim on appeal. See, also, *State v. Burge* (1992), 82 Ohio App.3d 244, 249, 611 N.E.2d 866, 868–869. Thus, appellant has waived his allied offense argument on appeal.

Moreover, this court has previously held that two separate and distinct offenses are committed where a defendant has completed the robbery and then restrained the victim's liberty by tying her hands in order to facilitate an escape. *State v. Wright* (Aug. 22, 1991), Cuyahoga App. No. 58953, unreported, 1991 WL 191735.

In the present case, appellant completed the robbery once he obtained the combination to the safe. He then subsequently restrained the victim's liberty by securing her hands together by binding her wrists in order to facilitate his escape. Hence, under the facts of this case, the crimes of robbery and kidnapping are not allied offenses of similar import.

Accordingly, appellant's seventh assignment of error is overruled.

Appellant's eighth assignment of error provides:

"VIII. The defendant was denied due process of law when the court immediately sentenced the defendant to the maximum consecutive sentences upon receipt of the verdict of the jury."

Appellant argues that the trial court abused its discretion by imposing the maximum consecutive sentences. Specifically, appellant contends it is readily apparent that he was being punished for going to trial and that the court did not consider the relevant statutory sentencing criteria. Appellant's argument lacks merit.

A trial court is vested with broad discretion in imposing a felony sentence, and this court will not reverse the sentence unless it is statutorily incorrect or the trial court abused its discretion by failing to consider the statutory sentencing factors. *State v. Kroner* (1988), 49 Ohio App.3d 133, 551 N.E.2d 212; *State v. Henry* (1987), 37 Ohio App.3d 3, 523 N.E.2d 877; *State v.*

*Yontz* (1986), 33 Ohio App.3d 342, 515 N.E.2d 1012. Furthermore, a silent record raises the presumption that the trial court considered the relevant statutory sentencing factors. *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361.

In the present case, it is uncontroverted that the sentences imposed by the trial court were within the statutory limits. Further, since the record is silent we must presume that the trial court considered the relevant statutory sentencing factors. *Id.* Appellant has failed to demonstrate that the trial court abused its discretion and there is absolutely no indication that the sentence was imposed as punishment for going to trial.

Accordingly, appellant's eighth assignment of error is overruled.

Appellant's ninth and tenth assignments of error provide:

"IX. The defendant was denied his constitutional rights when his sentence was unconstitutionally enhanced by reason of a 1982 conviction for an offense that did not constitute an aggravated felony.

"X. The defendant was improperly and unconstitutionally sentenced for an aggravated felony as the indictment did not allege a proper predicate prior conviction so as to enhance the sentence."

Appellant argues that his sentence was improperly and unconstitutionally enhanced pursuant to R.C. 2929.11(B)(1)(b) based on a prior robbery conviction, which at the time he was convicted in 1982 was not labeled as an "aggravated" felony. Appellant's arguments lack merit.

The record reflects that on the morning of trial appellant and his counsel stipulated that he was previously convicted of an aggravated felony. Specifically, the following appears as a matter of record:

"THE COURT: Mr. Jenkins, there's an aggravated felony specification. What's your pleasure as to that?

"DEFENSE COUNSEL: I would prefer to bifurcate the matters. Well, if the time comes, stipulate to that.

"THE COURT: What is going to be stipulated to; that there's a prior aggravated felony?

"DEFENSE COUNSEL: Yes.

"THE COURT: Is that correct, Mr. Perkins?

"THE DEFENDANT: Yes, your Honor."

Furthermore, this court has repeatedly considered and rejected the constitutional and statutory attacks raised by appellant's counsel against R.C. 2929.-11(B)(1)(b). See *State v. Canitia* (June 17, 1993), Cuyahoga App. Nos. 62492 and 62639, unreported, 1993 WL 215389; *State v. Gabriel* (May 11, 1989), Cuyahoga

App. No. 55513, unreported, 1989 WL 49994; *State v. Townsend* (May 12, 1988), Cuyahoga App. No. 53715, unreported; *State v. Lockett* (Feb. 18, 1988), Cuyahoga App. No. 53334, unreported, 1988 WL 18639; *State v. Kidd* (Apr. 24, 1986), Cuyahoga App. No. 47510, unreported, 1986 WL 5023; *State v. Maynard* (1987), 38 Ohio App.3d 50, 526 N.E.2d 316.

We reaffirm our prior holdings in the above cited cases and summarily reject appellant's ninth and tenth assignments of error. The penalty enhancement provision contained in R.C. 2929.11(B)(1)(b) was properly applied and appellant's sentence was constitutionally enhanced. Accordingly, appellant's ninth and tenth assignments of error are overruled.

*Judgment affirmed.*

BLACKMON and DYKE, JJ., concur.