**The STATE of Ohio, Appellant,**

**v.**

**KNOTTS, Appellee.**

[Cite as *State v. Knotts* (1995), 111 Ohio St.3d 753.]

Court of Appeals of Ohio,
Third District, Mercer County.

No. 10–94–22.

Decided July 5, 1995.

*Paul E. Howell,* Mercer County Prosecuting Attorney, for appellant.

*Louis J. Schiavone* and *Brent E. Anderson,* for appellee.

EVANS, Judge.

Pursuant to Crim.R. 12(J), the state of Ohio ("appellant") appeals from an order of the Court of Common Pleas of Mercer County suppressing the statements made by Martin A. Knotts ("appellee") during a custodial interrogation. For the reasons that follow, the judgment of the trial court is reversed.

I

On May 6, 1994, the Mercer County Sheriff's Department arrested appellee on charges of sexually abusing two of his six children. While in custody, appellee asked to speak with Sheriff's Detective Pat Elking, with whom appellee had spoken in November 1993 during the initial stages of the sheriff's department's investigation. Both Detective Elking and Investigator Kip Wright, the chief investigator of the Mercer County prosecutor's office, were assigned to question appellee on May 6.

Before questioning appellee, Detective Elking admonished appellee of his *Miranda* rights from a standard form used by the Mercer County Sheriff's Department. After reading each right aloud, Detective Elking asked whether appellee understood the right. Appellee indicated that he understood. After Detective Elking read to appellee all of his *Miranda* rights, appellee indicated that he wished to waive those rights. Appellee executed a written waiver form to that effect by signing his name at the bottom of the waiver form. After waiving his *Miranda* rights, appellee made several incriminating statements. A partial tape recording of appellee's waiver was made.

Prior to his arrest, appellee had been represented by an attorney in a pending juvenile court proceeding initiated by the Mercer County Department of Children's Services to terminate his parental rights. During the course of the May 6

interrogation, appellee referred to this attorney on two or three occasions but did not request to stop the questioning to consult with this attorney.

On May 19, 1994, the Mercer County Grand Jury indicted appellee with two counts of rape, both violations of R.C. 2907.02(A)(1)(b). On September 14, 1994, appellee moved to suppress the statements that he made on May 6, 1994. The trial court conducted a suppression hearing on October 28, 1994. At the hearing, the parties stipulated that the May 6 questioning was a custodial interrogation within the meaning of *Miranda*. It is undisputed that Detective Elking apprised appellee of his *Miranda* rights before questioning him. At the suppression hearing, Detective Elking and Investigator Wright testified that they knew appellee was not mentally stable based on their prior dealings with appellee and his family. Detective Elking and Investigator Wright testified that while appellee made bizarre and fantastical statements to them, he seemed lucid and unencumbered by alcohol or drugs during the questioning.

Expert testimony elicited at the suppression hearing from two court-appointed psychologists, Dr. Cherry and Dr. Hope, revealed that appellee's I.Q. ranged between 70 and 84 on the Wechsler Adult Intelligence Scale, placing appellee in the low average range of intelligence. According to the expert testimony, appellee has a history of childhood schizophrenia and paranoid schizophrenia. Appellee's ability to comprehend the spoken word is adequate. Both experts testified that appellee was competent to stand trial and could assist his attorney in his defense.

Dr. Hope testified that appellee understood the nature of his right against self-incrimination and that his statements on May 6, 1994 were voluntary. Dr. Cherry testified that while appellee was capable of voluntarily waiving his constitutional privilege against self-incrimination, he did not do so knowingly and intelligently. Dr. Cherry concluded that appellee was acutely psychotic on May 6 and, therefore, incapable of understanding abstract concepts such as the right to counsel and the right against self-incrimination.

In a judgment entry dated December 12, 1994, the trial court suppressed the statements made by appellee to Detective Elking and Investigator Wright. Rather than defining appellee's statements as a confession, the trial court characterized appellee's statements as an implausible explanation as to how appellee's sperm was found in the anal cavities of two of his daughters, both under the age of thirteen.

Without making a finding of police misconduct, the trial court determined that Detective Elking and Investigator Wright's knowledge of appellee's mental illness, coupled with their failure to contact the attorney representing appellee in the pending juvenile court proceedings, in conjunction with the expert testimony that appellee was acutely psychotic during the interrogation, undercut appellee's

ability to voluntarily waive his Fifth Amendment privilege against self-incrimination. The trial court expressly found the expert testimony of Dr. Cherry more credible, ruling that Dr. Cherry's review of the May 6 tape recorded waiver enhanced his expert evaluation of appellee. Dr. Hope did not review the tape-recorded waiver as part of her expert evaluation of appellee. The trial court then ruled that the state did not meet its burden of proving that these statements were voluntarily, knowingly, and intelligently made. Consequently, the trial court suppressed appellee's statements.

Pursuant to Crim.R. 12(J) the state now brings this appeal.

## II

The state raises two assignments of error for our review:

### Assignment of Error No. 1

"The trial court erred when, despite the absence of police coercion or misconduct, it found that the defendant did not make his custodial interrogation statements knowingly, intelligently, and voluntarily and suppressed the statements."

### Assignment of Error No. 2

"The trial court erred when it found that the defendant did not waive his *Miranda* rights, as such finding was against the manifest weight of the evidence and was clearly erroneous."

Because appellant's two assignments of error are interconnected, they will be addressed together. Appellant challenges the propriety of the trial court's decision to suppress appellee's custodial statements in the absence of any proof of police misconduct or coercion. Appellee contends that he was incapable of voluntarily, knowingly, and intelligently waiving his *Miranda* rights in light of his diminished mental capacity.

A statement is not compelled within the meaning of the Fifth Amendment if an individual "voluntarily, knowingly and intelligently" waives his constitutional privilege. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 707. The voluntariness of a confession is determined in light of the totality of the circumstances in each case. *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547, certiorari denied (1989), 489 U.S. 1042, 109 S.Ct. 1099, 103 L.Ed.2d 241. In reviewing a ruling on a motion to suppress, "an appellate court must bear in mind that the weight of the evidence and the credibility of the witnesses are for the trier of fact." *DePew*, 38 Ohio St.3d at 277, 528 N.E.2d at 547, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583, 584. Nevertheless, we must review the record to

determine whether substantial evidence exists to support the trial court's ruling. *State v. Brown* (1993), 91 Ohio App.3d 427, 429, 632 N.E.2d 970, 971 (*per curiam* ).

"Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly* (1986), 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 485. See, also, *State v. Hill* (1992), 64 Ohio St.3d 313, 318, 595 N.E.2d 884, 890. The inquiry into whether a waiver is coerced has two distinct features:

"First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine* (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 421.

In *Colorado v. Connelly* (1986), 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473, 484, the United States Supreme Court declined to establish a constitutional right of a criminal defendant to confess to his crime only when totally rational and properly motivated, holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." The *Connelly* court, at 164, 107 S.Ct. at 520, 93 L.Ed.2d at 482, reasoned:

"Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. Respondent correctly notes that as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus. See *Spano v. New York*, 360 U.S. 315 [79 S.Ct. 1202, 3 L.Ed.2d 1265] (1959). But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' "

In *State v. Dailey* (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus, the Supreme Court of Ohio held:

"A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. (*Colorado v. Spring* [1987], 479 U.S. 564, 574 [107 S.Ct. 851, 857–858, 93 L.Ed.2d 954, 966], followed.)"

■ The record in this case is devoid of any evidence that Detective Elking or Investigator Wright engaged in any coercive misconduct. Appellee does not allege that he was physically deprived, mistreated, threatened, or induced to waive his *Miranda* rights. Instead, appellee alleges that Detective Elking and Investigator Wright's decision to question appellee while aware of appellee's diminished mental capacity constituted an impermissible psychological ploy to extract incriminating statements from appellee. We reject this argument. Mere knowledge of appellee's mental condition, standing alone, does not suggest that the law enforcement officials resorted to psychological pressure or tactics to induce appellee to make incriminating statements. In the absence of any police misconduct resulting in appellee's incriminating statements, his diminished mental aptitude "did not undercut the voluntariness of his statements or his waiver of his *Miranda* rights." *State v. Hill,* 64 Ohio St.3d at 318, 595 N.E.2d at 890. See, also, *State v. Dailey,* 53 Ohio St.3d at 92, 559 N.E.2d at 463.

■ There is also ample evidence to indicate that appellee's waiver of his Fifth Amendment privilege was knowingly and intelligently made. The requisite level of comprehension needed to waive one's *Miranda* rights "does not require that a criminal suspect know and understand every possible consequence of a waiver of his Fifth Amendment privilege." *Colorado v. Spring* (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 966. For example, in *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, the Supreme Court of Ohio held that a defendant who had a low I.Q. and a reading capacity at a second grade level knowingly and intelligently waived his rights after he indicated that he understood his rights as read to him by the police. In *State v. Dailey,* 53 Ohio St.3d at 92, 559 N.E.2d at 463, the Supreme Court of Ohio found a defendant's waiver knowingly and intelligently made where the defendant's general I.Q. was 71, his word identification was at the 1.8 grade level, and his reading comprehension was documented at below the third grade level. In *State v. Hill,* 64 Ohio St.3d 313, 595 N.E.2d 884, the Supreme Court of Ohio found that the defendant's mental retardation, difficulties in language comprehension, and illiteracy did not prevent him from knowingly and intelligently waiving his *Miranda* rights. Furthermore, the United States Supreme Court in *Connelly* found the defendant's waiver valid, despite the fact that he suffered from "command hallucinations" which interfered with his ability to make free and rational choices.

■ In this case, Detective Elking read appellee his *Miranda* rights. Appellee indicated that he understood those rights. Both experts testified that appellee's ability to comprehend the spoken word was adequate. Appellee then signed a written waiver of rights. A written waiver of rights is strong proof that such waiver is valid. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854 (*per curiam*). Detective Elking and Investigator Wright testified that

appellee seemed lucid and sober. The record indicates that appellee was sufficiently aware of the time, space, geography, and environment of his statements, as well as the fact that the persons to whom he spoke were law enforcement officials. Under the totality of the facts in this case, we find that appellee voluntarily, knowingly, and intelligently waived his *Miranda* rights.

Suppression of evidence has been used by the courts to prevent misconduct by law enforcement officers when dealing with an accused. Since no police misconduct is shown on the record of this case, there exists no basis for suppressing the statements of appellee. Whether appellee's statements are admissible under the Ohio Rules of Evidence is not currently a question before us and we make no pronouncements concerning the admissibility of appellee's statements.

Appellant's two assignments of error are well taken and they are sustained. Accordingly, the judgment of the trial court is reversed.

### III

Having found error prejudicial to appellant herein, in the particulars assigned and argued, the judgment of the trial court is reversed and the cause remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT, P.J., and SHAW, J., concur.