**The STATE of Ohio, Appellee,**

v.

**CEDENO, Appellant.**

[Cite as *State v. Cedeno*, 192 Ohio App.3d 738, 2011-Ohio-674.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970465.

Decided Feb. 16, 2011.

740

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Assistant Prosecuting Attorney, for appellee.

Gayle S. Goldsmith, for appellant.

Per Curiam.

{¶ 1} Defendant-appellant Edgar Cedeno appeals from his convictions upon jury verdicts finding him guilty on four counts of aggravated robbery, four counts of robbery, and nine counts of kidnapping. He presents on appeal two assign-

ments of error. Finding no merit to the challenges advanced there, we overrule the assignments of error. But because the trial court failed to sentence Cedeno in conformity with the statutory mandates concerning postrelease control, we vacate his sentences in part.

## On Reconsideration

{¶ 2} Cedeno was convicted in 1997. He unsuccessfully appealed his convictions to this court and to the Ohio Supreme Court.[1]

{¶ 3} In September 2010, citing the Ohio Supreme Court's decisions in *State v. Jordan*[2] and its progeny, Cedeno applied under App.R. 26(A) for reconsideration of our 1998 decision in his case. The *Jordan* line of cases had made apparent our error in failing to vacate Cedeno's sentences as void to the extent that they did not conform to the statutory mandates concerning postrelease control.[3] And those decisions provided the extraordinary circumstances that warranted enlarging the application time.[4] For those reasons, we granted reconsideration. And we here reconsider, and substitute this decision for, our 1998 decision.

## The Facts

{¶ 4} The charges against Cedeno arose in connection with armed robberies in a fast-food restaurant and in a drugstore. On the evening of January 24, 1997, two armed men, later identified as Cedric Roberson and Jerome Watson, entered a fast-food restaurant. The two men forced four restaurant employees into the restaurant's freezer and ordered a fifth employee to join them there after he had opened the restaurant's safe. The robbers then emptied the safe and left the restaurant.

{¶ 5} A week later, a man later identified as Cedeno walked through a drugstore. Less than ten minutes later, Watson and Roberson entered the store. Watson placed store merchandise on the checkout counter, reached into his pocket, pulled out a handgun, and directed the cashier to surrender the contents of the cash register. He then ordered the store manager to open the safe and threatened to kill him if he refused.

{¶ 6} Roberson had, meanwhile, proceeded to the pharmacy at the back of the store. Brandishing a handgun, he ordered the pharmacist and the pharmacy

---

1. See *State v. Cedeno* (Oct. 23, 1998), 1st Dist. No. C–970465, 1998 WL 735353, motion for leave to file delayed appeal denied (1999), 87 Ohio St.3d 1442, 719 N.E.2d 5.

2. *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864.

3. See App.R. 26(A); *State v. Black* (1991), 78 Ohio App.3d 130, 132, 604 N.E.2d 171.

4. See App.R. 14(B).

technician to their knees and took money from their purses. Watson and Roberson then directed the four employees into a storage room and onto their stomachs, threw boxes and chairs on top of them, and left the store through a back door.

{¶ 7} The police later identified Roberson as a suspect in the drugstore robbery based upon a partial fingerprint lifted from the merchandise that he had placed on the checkout counter. On February 5, 1997, the police stopped a car that Roberson was driving and in which Watson and Cedeno were riding. A search disclosed a .38–caliber revolver and a .380 automatic pistol in the car's trunk and a bullet from a .380 automatic pistol in Cedeno's pocket.

{¶ 8} The three men were transported to police headquarters, separated, and interviewed. Roberson and Watson implicated Cedeno in the two robberies. And Cedeno gave a recorded statement to police in which he described each robbery in detail and admitted to driving the "getaway" car.

### Assignments of Error

{¶ 9} *Missing jury-verdict form.* In addition to the challenges advanced in his two assignments of error, Cedeno has brought to our attention the absence from the record of a written verdict form for count 17 of the indictment. But the jury's verdict was read into the record, and that recitation included the statement of a guilty verdict on count 17 and its specifications. Further, the court's sentencing entry states that the jury had returned a verdict of guilty on count 17 and sets forth the sentence imposed on that count. That entry is the final, appealable order in this case,[5] and we do not regard the absence of a written verdict form as a significant defect. Further, Cedeno did not object in the trial court and has not assigned the matter as error in this appeal. Consequently, we conclude that he has waived the issue, and we find no plain error.[6]

{¶ 10} *Motion to suppress.* In his first assignment of error, Cedeno contends that the trial court erred in overruling his motion to suppress his taped confession. He argues that the record does not show that he waived his *Miranda* rights[7] or that he voluntarily confessed. We find no merit to this contention.

{¶ 11} Our review of this assignment of error involves two distinct issues: (1) whether Cedeno knowingly, intelligently, and voluntarily waived his *Miranda*

---

5. See *State v. Hunt* (1976), 47 Ohio St.2d 170, 174, 1 O.O.3d 99, 351 N.E.2d 106.

6. See *State v. Wickline* (1990), 50 Ohio St.3d 114, 119–120, 552 N.E.2d 913, certiorari denied (1990), 498 U.S. 908, 111 S.Ct. 281, 112 L.Ed.2d 235; *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 444 N.E.2d 1332.

7. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

rights and (2) whether his statement to the police was made voluntarily under the Due Process Clause of the United States Constitution.[8]

{¶ 12} We begin with the *Miranda* analysis. For a statement of the accused to be admissible into evidence, the state bears the burden of proving that (1) before his interrogation, the accused was given the *Miranda* warnings, (2) after receiving the warnings, he expressly stated his desire to waive his constitutional rights, and (3) he voluntarily, knowingly, and intelligently waived those rights.[9]

{¶ 13} The tape of Cedeno's confession does not contain a recitation of his rights. But it does show that Cedeno had replied in the affirmative when asked whether he had been advised of and understood his rights. And one of Cedeno's interrogators testified at the hearing on the motion to suppress that before questioning Cedeno, he had read Cedeno his rights. Thus, although the better practice would have been to advise Cedeno of his rights on tape, the record shows that he was advised of his *Miranda* rights.

{¶ 14} Cedeno also contends that his interrogators did not tell him of his right to stop the questioning at any time. The *Miranda* warnings given to an accused prior to a police interrogation need not be a virtual incantation of the precise language contained in the *Miranda* opinion.[10] *Miranda* is satisfied when, before questioning, the police fully inform the suspect that the state intends to use his or her statements to secure a conviction and that the suspect has a right to remain silent and to have counsel present.[11] The warnings provided to Cedeno satisfied those requirements. Therefore, the warnings were adequate, and the lack of a specific warning concerning the right to stop questioning did not invalidate Cedeno's confession.[12]

{¶ 15} Because there was evidence from which the trial court could have concluded that Cedeno had been adequately advised of his *Miranda* rights, we turn to the issue of whether he knowingly, intelligently, and voluntarily waived those rights. The state must prove such a waiver by a preponderance of

8. See *State v. Eley* (1996), 77 Ohio St.3d 174, 178, 672 N.E.2d 640, certiorari denied (1997), 521 U.S. 1124, 117 S.Ct. 2522, 138 L.Ed.2d 1023.

9. See *State v. Edwards* (1976), 49 Ohio St.2d 31, 38, 3 O.O.3d 18, 358 N.E.2d 1051, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155.

10. See *State v. Dailey* (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph one of the syllabus.

11. See id. at 90–91, 559 N.E.2d 459.

12. See id.; *Edwards*, 49 Ohio St.2d at 38–39, 3 O.O.3d 18, 358 N.E.2d 1051.

the evidence.[13] And the court may not presume a waiver simply from the fact that the accused had responded to questioning.[14]

{¶ 16} The inquiry into whether a waiver has been coerced has two distinct dimensions. First, the relinquishment of the right must have been voluntary " 'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " Second, the suspect must have made the waiver " 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' "[15] " 'Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.' "[16] A suspect's decision to waive his rights is voluntary in the absence of evidence that his will was overborne or that his capacity for self-determination was critically impaired because of coercive police conduct.[17]

{¶ 17} We now reach the second part of our analysis: whether Cedeno's confession itself was voluntary. The prosecution must prove by a preponderance of the evidence that the confession was voluntary.[18] While the issue of whether a confession was made voluntarily is distinct from the issue of whether an accused knowingly and voluntarily waived his *Miranda* rights, both issues are analyzed under the totality-of-the-circumstances test.[19] Thus, the Ohio Supreme Court has declared that "[i]n deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or induce-

---

13. See *Colorado v. Connelly* (1986), 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473; *State v. Knotts* (1995), 111 Ohio App.3d 753, 757, 677 N.E.2d 358.

14. See *Edwards*, 49 Ohio St.2d at 37–38, 3 O.O.3d 18, 358 N.E.2d 1051; *State v. Rowe* (1990), 68 Ohio App.3d 595, 606, 589 N.E.2d 394.

15. *Dailey*, 53 Ohio St.3d at 91, 559 N.E.2d 459, quoting *Moran v. Burbine* (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410; *Knotts*, 111 Ohio App.3d at 757, 677 N.E.2d 358.

16. *Dailey*, 53 Ohio St.3d at 91, 559 N.E.2d 459, quoting *Moran*, 475 U.S. at 422–423, 106 S.Ct. 1135, 89 L.Ed.2d 410.

17. See id., paragraph two of the syllabus.

18. See *Lego v. Twomey* (1972), 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618.

19. *Eley*, 77 Ohio St.3d at 178, 672 N.E.2d 640; *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, certiorari denied (1989), 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 823.

ment."[20] Coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the Due Process Clause.[21]

{¶ 18} After reviewing the record, we cannot hold that Cedeno's confession was the result of coercive police activity. The record shows that Cedeno was in his early twenties and that he had had no previous experience with the criminal-justice system. But it also shows that he was intelligent and had had some college education. He was not under the influence of alcohol or drugs or mentally impaired in any way. Although he was in police custody for several hours prior to the interrogation, the interrogation itself was not long and protracted. There is no evidence of abuse or threats. One interrogator testified that Cedeno had been offered food, drink, and the use of a restroom; Cedeno testified to the contrary. But the trial court was entitled to discount Cedeno and to believe his interrogator because the credibility of testimony presented at a hearing on a motion to suppress is for the trial court to decide.[22]

{¶ 19} Cedeno makes much of the fact that he did not sign a written waiver. While evidence of a written waiver provides strong proof that the waiver was voluntary,[23] the lack of a written waiver does not render an otherwise knowing and voluntary waiver invalid.

{¶ 20} Cedeno also makes much of the fact that his interrogators admitted that they had told him about the seriousness of the charges and about the amount of prison time that he could receive if convicted, and that they had promised him that they would advise the court if he cooperated. Under the totality-of-the-circumstances standard, the presence of promises does not, as a matter of law, render a confession involuntary.[24] Consequently, courts have held that promises that the defendant's "cooperation" would be considered in the disposition of his case, or that it would be in the defendant's "best interest" to tell the "real story," did not negate the voluntary nature of a confession.[25] Likewise,

---

20. *Edwards*, 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus.

21. See *Connelly*, 479 U.S. at 167, 107 S.Ct. 515, 93 L.Ed.2d 473; *State v. Combs* (1991), 62 Ohio St.3d 278, 285, 581 N.E.2d 1071, certiorari denied (1992), 504 U.S. 977, 112 S.Ct. 2950, 119 L.Ed.2d 573.

22. See *State v. Hill* (1995), 73 Ohio St.3d 433, 446, 653 N.E.2d 271, certiorari denied (1996), 516 U.S. 1079, 116 S.Ct. 788, 133 L.Ed.2d 738.

23. See *Eley*, 77 Ohio St.3d at 179, 672 N.E.2d 640.

24. See *Edwards*, 49 Ohio St.2d at 40–41, 3 O.O.3d 18, 358 N.E.2d 1051.

25. Id. at 41, 3 O.O.3d 18, 358 N.E.2d 1051.

we cannot hold that the statements about which Cedeno now complains were so coercive as to render his confession involuntary as a matter of law.

{¶ 21} In sum, the record does not demonstrate that Cedeno's statements were the result of coercive police misconduct. The state proved by a preponderance of the evidence that he had knowingly, intelligently, and voluntarily waived his *Miranda* rights and that his confession was voluntary. Consequently, the trial court did not err in overruling his motion to suppress his confession, and we overrule his first assignment of error.

{¶ 22} ***Weight and legal sufficiency of the evidence.*** In his second assignment of error, Cedeno contends that the trial court erred in failing to grant his motion for a judgment of acquittal pursuant to Crim.R. 29 and that his convictions were contrary to the manifest weight of the evidence. These challenges are also untenable.

{¶ 23} Cedeno's argument does not take into account the difference between a claim that the evidence is insufficient to support a conviction and a claim that the conviction is against the manifest weight of the evidence. They are different concepts and the standards for reviewing them are different.[26] A claim that the trial court should have granted a Crim.R. 29 motion for a judgment of acquittal is a claim that the evidence was insufficient to support the conviction.[27] Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.[28]

{¶ 24} Accomplices to the commission of an offense can be prosecuted and punished as if they were the principal offenders.[29] The state's evidence, if believed, showed that Cedeno had confessed to being the "getaway" driver in armed robberies at two businesses. During those robberies, the businesses' employees were restrained of their liberty and two drugstore employees were robbed of their personal belongings. Accordingly, we hold that reasonable minds could have reached different conclusions as to whether the elements of each count

---

26. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus; *State v. Ashbrook* (Apr. 30, 1997), 1st Dist. No. C–960535, 1997 WL 208148.

27. See *State v. Julian* (1998), 129 Ohio App.3d 828, 719 N.E.2d 96; *State v. Horn* (Sept. 15, 1998), 10th Dist. No. 98AP–92, 1998 WL 667888.

28. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

29. See *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph two of the syllabus, certiorari denied (1988), 488 U.S. 900, 109 S.Ct. 250, 102 L.Ed.2d 238.

of aggravated robbery, robbery, and kidnapping had been proved beyond a reasonable doubt.[30] Therefore, the trial court did not err in overruling Cedeno's motion for a judgment of acquittal.

{¶ 25} Even when the evidence is legally sufficient to support a conviction, an appellate court may still reverse the conviction as being against the manifest weight of the evidence.[31] When reviewing a claim that a verdict is against the manifest weight of the evidence, an appellate court reviews the record and determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[32] After reviewing the record in this case, we cannot conclude that the jury lost its way in returning the guilty verdicts. Accordingly, we overrule Cedeno's second assignment of error.

### Postrelease Control

{¶ 26} Cedeno was found guilty on four counts of aggravated robbery and nine counts of kidnapping, all first-degree felonies, and he was also found guilty on four counts of robbery, all second-degree felonies. The sentencing court was therefore, by statute, required to notify Cedeno at sentencing that he would be subject to postrelease-control supervision upon his release from prison,[33] and it was also required to "include" in the judgment of conviction "a requirement that [Cedeno] be subject to [the prescribed] period of post-release control."[34] The court failed to satisfy either statutory requirement. Consequently, to that extent, Cedeno's sentences are void,[35] and he is "entitled * * * to [the] proper imposition of postrelease control."[36]

**30.** See *State v. Perkins* (1994), 93 Ohio App.3d 672, 681, 639 N.E.2d 833; *State v. Martin* (Oct. 24, 1997), 1st Dist. No. C–960563, 1997 WL 661329.

**31.** See *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**32.** See *State v. Allen* (1990), 69 Ohio App.3d 366, 374, 590 N.E.2d 1272.

**33.** See R.C. 2929.19(B)(3)(c); *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, paragraph one of the syllabus.

**34.** R.C. 2967.28(B); see *Jordan*, paragraph one of the syllabus.

**35.** See *Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at ¶ 23 (holding that the sentencing court's failure to provide the statutorily mandated notification concerning postrelease control rendered the sentence void); accord *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301 (following *Jordan* to grant a writ of habeas corpus compelling defendant's release from prison for violating postrelease control because the parole authority lacked authority to impose postrelease control when the trial court had failed to notify defendant concerning postrelease control or to include postrelease control in the judgment of conviction).

**36.** *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph two of the syllabus ("modify[ing]" *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961,

{¶ 27} In this appeal, Cedeno has not assigned as error the trial court's failure to sentence him in conformity with the statutory mandates concerning postrelease control. But a void sentence "may be reviewed at any time, on direct appeal or by collateral attack."[37] Thus, irrespective of a case's procedural posture, when a sentence is void to the extent that it does not conform to the statutory mandates concerning postrelease control, and the matter has come to the attention of either the trial court or a reviewing court, the court must vacate that portion of the sentence,[38] and postrelease control must be properly imposed.[39]

### Conclusion

{¶ 28} Accordingly, we vacate Cedeno's sentences in part and remand this case for resentencing in accordance with the law and this decision. In all other respects, we affirm the judgment of the court below.

Sentences vacated in part
and cause remanded.

CUNNINGHAM, P.J., and HILDEBRANDT and HENDON, JJ., concur.

---

syllabus, by holding that "[t]he new sentencing hearing to which an offender is entitled under *State v. Bezak* is limited to proper imposition of postrelease control").

**37.** See id., paragraph one of the syllabus.

**38.** See *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, ¶ 12; accord *State v. Holcomb*, 184 Ohio App.3d 577, 2009-Ohio-3187, 921 N.E.2d 1077, ¶ 17–20; *State v. Long*, 1st Dist. No. C–100285, 2010-Ohio-6115, 2010 WL 5140785, ¶ 5.

**39.** See *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph two of the syllabus.