OPINION
Defendant-appellant, Benjamin Connor, appeals his jury conviction for rape and gross sexual imposition. We affirm the judgment of the trial court.
The victims in this case are appellant's nephews and his niece. Three of the children were four years old at the time of the offenses, and one child was seven years old. Appellant's nephews reported to their parents that appellant had engaged in sexual contact with them, and the parents took the children to the hospital and then to the Brown County Department of Human Services. The Brown County Sheriff's Department brought appellant to meet with Investigator Barry Creighton of Human Services and appellant made a tape-recorded statement admitting to sexual contact with his nephews and niece.
Appellant was charged with four counts of rape of a child under the age of thirteen. One count of rape was dismissed after the trial court determined two of the four-year-old victims were not competent to testify.[1] Appellant pled not guilty and not guilty by reason of insanity to the charges. The trial court ordered a competency evaluation and appellant was examined by a Dr. Hagen at the Shawnee Forensic Center. The competency report concluded that appellant did not demonstrate mental illness or mental retardation and was competent to stand trial. Appellant filed a motion to suppress the confession he made to Creighton, and the trial court denied the motion.
A jury found appellant guilty of two counts of rape pursuant to R.C. 2907.02 and one count of gross sexual imposition pursuant to2907.05(A). He was sentenced to seven years of imprisonment for each of the rape convictions and two years for the gross sexual imposition conviction with the sentences to be served consecutively. After a hearing, the trial court made a determination that appellant is a sexual predator. Appellant filed a motion for a new trial and the motion was denied by the trial court.
Appellant appeals his conviction and raises four assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S FIFTH, EIGHTH
AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION BY ADMITTING A STATEMENT MADE BY THE DEFENDANT WHEN HE WAS MENTALLY INCOMPETENT TO MAKE A KNOWING AND INTELLIGENT WAIVER OF HIS RIGHTS.
In the first assignment of error, appellant contends that the trial court should have suppressed his taped statement because the confession was not knowing and intelligent. As support, appellant argues that he has a low I.Q. and that the competency evaluation report states that appellant was not familiar with the concept of his Fifth Amendment rights.
When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial and credible evidence. State v.Williams (1993), 86 Ohio App.3d 37, 41.
A defendant may waive the rights conveyed in a Miranda warning provided the waiver is made knowingly, intelligently and voluntarily. State v. Dailey (1990), 53 Ohio St.3d 88, 91. The question of whether a waiver was knowing and intelligent is a factual issue that must be determined based on the totality of the circumstances. State v. Mulkey (1994), 98 Ohio App.3d 773, 781. Mental capacity is only one factor to be considered in making the determination. Id. "The constitution does not require that a criminal suspect know and understand every possible consequence of waiver of the Fifth Amendment privilege." Colorado v. Spring
(1987), 479 U.S. 564, 574, 107 S.Ct. 851, 857. Individuals with a lower I.Q. are capable of knowingly and intelligently waiving their Fifth Amendment rights. See State v. Hill (1992), 64 Ohio St.3d 313,319; State v. Edwards (1976), 49 Ohio St.2d 31, 39.
Investigator Creighton read through a form entitled "Constitutional Rights" with appellant. After each individual right was read and discussed, appellant wrote "yes" in answer to the written question, "Do you understand this?" At the bottom of the form, appellant answered "yes" to a question asking whether he wished to waive his right against self-incrimination and make a statement at that time. Appellant then discussed the incidents with Creighton. After admitting sexual contact with the children, appellant agreed to make a tape-recorded statement. At the start of the tape-recording, Creighton again discussed each of appellant's rights with him and appellant verbally indicated that he wished to waive his rights and make a statement. Appellant then confessed to having sexual contact with his nephews and his niece. At the conclusion of the tape, Creighton again briefly asked appellant if his statement was made voluntarily and appellant stated that it was.
We find no error in the trial court's determination that appellant's statement was made knowingly, intelligently and voluntarily. The language of the competency report broadly states that one concept appellant was unfamiliar with was hisFifth Amendment rights. The report also states that appellant is able to read simple sentences and that his intellectual abilities are below average, but not at the level of mental retardation. Appellant's rights were explained to him several times by Inspector Creighton and appellant stated verbally and in writing that he understood his rights.
Although appellant argues that his I.Q. is low and that he was in learning disabled classes, the totality of the circumstances indicate that appellant was able to understand his rights as they were explained to him. The record indicates that appellant understood that he was not required to make a statement to Inspector Creighton, that any statement he made could be used against him, and that he could talk to an attorney if he wished. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW BY DELIBERATE MISCONDUCT OF THE PROSECUTING ATTORNEY. THE INTENTIONAL MISCONDUCT OF THE PROSECUTOR CONSTITUTES REVERSIBLE ERROR AND DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.
In the second assignment of error, appellant contends that he was denied a fair trial because the prosecutor had previously represented appellant and his family. The prosecutor represented appellant by defending him against a similar charge when appellant was a juvenile, and also represented appellant's family in a domestic matter.
The test for prosecutorial misconduct is whether the prosecutor's actions were improper and, if so, whether appellant's rights were substantially affected. State v. Smith (2000),87 Ohio St.3d 424, 442. The analysis must center on "the fairness of the trial, not the culpability of the prosecutor." Id., citingSmith v. Philips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947. The prosecutor's conduct cannot be grounds for a new trial unless the conduct deprives the defendant of a fair trial. State v.Keenan (1993), 66 Ohio St.3d 402, 405.
Although appellant argues that the prosecutor's conduct was a violation of the Code of Professional Responsibility, appellant has produced no evidence to establish that he was prejudiced or denied a fair trial because of the prosecutor's actions. There is no evidence that the prosecutor used any confidential information he received in his former representation of appellant. Appellant did not testify at trial and was not subject to cross-examination by the prosecutor. Appellant's juvenile charges were not mentioned at trial, nor were any prior bad acts. Since no prejudice is demonstrated by the record, the prosecutor's actions are not a sufficient basis for granting a new trial. As appellant has not presented any evidence as to how he was denied a fair trial by the prosecutor's prior representation, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO HAVE HIS COMPETENCE, AT THE TIME OF THE OFFENSE, EVALUATED, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10 AND ARTICLE I OF THE OHIO CONSTITUTION.
Appellant next contends that he was denied effective assistance of counsel. Specifically, appellant states that trial counsel did not request an independent medical evaluation, failed to prepare for trial, consented to admission of the competency evaluation, waived opening statement, and did not challenge the court's ruling on the competency of the children to testify at trial.
To decide appellant's claim of ineffective assistance of counsel, we must apply the two-tier test of Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance. Second, appellant must show that he was prejudiced as a result of counsel's actions. Id. at 689. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. Statev. Bradley (1989), 42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of professional assistance. Id. at 142.
Appellant first argues that his counsel was ineffective because he failed to obtain an independent medical evaluation. Appellant argues that trial counsel was aware that appellant had a low I.Q. and was receiving benefits from the U.S. Government due to his mental condition. Appellant argues that trial counsel had in his possession various reports from doctors and hospitals diagnosing appellant with mental retardation. Trial counsel did not ask for an independent expert evaluation by an examiner chosen by appellant as permitted by R.C. 2945.371(B).
Because appellant pled not guilty by reason of insanity, trial counsel could have requested an independent medical evaluation by an examiner of appellant's choice. R.C. 2945.371(B). However, we cannot say that counsel was ineffective for failing to request another medical evaluation simply because appellant was entitled to one by law. We have previously discussed the competency issue, and there is sufficient evidence, outside the report, to show appellant was capable of understanding his rights. The decision not to request another evaluation may have been a tactical strategy, since a second report finding appellant competent to stand trial and not under any mental illness would bolster the state's position. Even though counsel may have been aware that his client had a low I.Q. and mental retardation, there is nothing in the record showing that a second evaluation would have determined appellant not competent to stand trial or that he was legally insane.
Appellant next argues that trial counsel did not prepare and produce documentation of appellant's mental retardation, although such evidence was available. Again, such evidence goes to the reliability of appellant's confession and to his competency. In addition, counsel introduced the testimony of appellant's mother at trial to address this issue. Appellant's mother testified regarding her son's mental abilities and level of maturity. Appellant has failed to demonstrate how such additional evidence would have changed the outcome of his trial.
Appellant next argues that trial counsel erred by allowing the competency evaluation to be admitted unchallenged. He argues that the stipulation allowed the report to be admitted uncontested and forfeited any cross-examination of the preparing physician. Generally, decisions to stipulate to facts or evidence are tactical decisions which fall within the wide range of reasonable professional decisions. See State v. Otte (1996), 74 Ohio St.3d 555,565; State v. Green (1993), 66 Ohio St.3d 141, 148. In addition, at the competency hearing, trial counsel stated that appellant read the competency report, understood what the report said, and agreed to stipulate to the report. The trial court then questioned appellant, who verbally agreed to stipulate to the admission of the report.
Appellant also argues that counsel erred by waiving opening statement. As support, appellant cites a handbook for criminal defense lawyers that states opening statement should never be waived. However, Ohio courts have held that the decision to waive opening statements is a tactical decision that does not rise to the level of ineffective assistance of counsel. State v. Williams
(1991), 74 Ohio App.3d 686, 700; Bradley (1989),42 Ohio St.3d at 143.
Appellant contends that his trial counsel was ineffective by failing to file an interlocutory appeal to contest the trial court's ruling on the competency of the two children who testified at trial. The court held separate hearings to determine whether the four children involved in the allegations were competent to testify at trial. The court found two of the children were competent, and that two did not meet the legal standard for competency. A review of the record shows that the trial court evaluated the children's testimony and found that two children met the standards for competency enumerated in State v. Frazier
(1991), 61 Ohio St.3d 247. The transcripts of the hearings support the trial court's findings. Trial counsel argued that the standards were not met with respect to one of the children ruled competent to be a witness, but the trial court stated that counsel's arguments went to credibility, not competency. Appellant's trial counsel had the opportunity to cross-examine the children at trial and to explore the credibility of their testimony. We cannot say that under these facts that the decision not to file an interlocutory appeal is a trial strategy that falls outside the wide range of professional assistance.
Because trial counsel's performance did not fall below an objective standard of reasonableness, and appellant has not established that he was denied a fair trial by the actions of his trial counsel, appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 THE JURY VERDICTS RENDERED HEREIN ARE NOT SUPPORTED BY EVIDENCE AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his final assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact-finder's resolution of any conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380,389. The standard for reversal of a verdict which is against the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
In support of this argument, appellant states that the children's testimony was rehearsed, that the children were incompetent to testify, that appellant was incapable of understanding his rights, and that there was no forensic evidence that the sexual contact occurred. Appellant argues that this evidence is insufficient to convict him.
The jury found appellant guilty of two counts of rape pursuant to R.C. 2907.02 and one count of gross sexual imposition pursuant to 2907.05(A). One of the children testified that appellant took his clothes off and "put his private in my butt." The child testified that he saw appellant do the same to his younger brother. Appellant's niece testified that appellant touched her privates with his fingers. Investigator Creighton testified that appellant at first denied any sexual contact with the children, but admitted to the allegations after being told the children were taken to the hospital to be examined. Appellant's taped statement was admitted into evidence at the trial. On the tape, appellant admits that he put "his penis into the butt" of the two boys. In the taped statement, appellant also admitted to touching the private area of his niece while masturbating.
We find there was sufficient evidence from which the jury could have concluded beyond a reasonable doubt that appellant committed the offenses of rape and gross sexual imposition. Appellant's fourth assignment of error is overruled.
POWELL, P.J., concurs.
VALEN, J., dissents.
[1] The count involving the other four-year-old victim was not dismissed since the incident was witnessed by his seven-year-old brother.