OPINION
{¶ 1} Defendant, Joe Brown, appeals from his conviction and sentence for felonious assault, intimidation of a crime victim, and kidnapping.
 {¶ 2} The evidence presented by the State demonstrates that Jennifer Johnson and her boyfriend, Marty Newberry, lived together at 241 S. Westview in Dayton. During the last weekend in March 2001, Newberry repeatedly engaged in acts of domestic violence against Johnson. On Sunday, April 1, 2001, Johnson called police and reported the domestic violence. Newberry was arrested that day pursuant to the domestic violence complaint Johnson filed. That evening Newberry posted bond and was released. Pursuant to the terms of the bond, Newberry was not permitted to return to the Westview residence until after his arraignment. On Monday, April 2, 2001, both Newberry and Johnson appeared in court for Newberry's arraignment. The case did not go forward, however, and Newberry was ordered to return to court the following day, April 3, 2001.
 {¶ 3} On the morning of April 3, 2001, at around 6:00 a.m., Johnson was home in bed when she awoke to find Defendant Joe Brown standing in the bedroom doorway. Defendant was very angry with Johnson because Defendant's life-long friend, Newberry, had been arrested for domestic violence. When Johnson asked Defendant to leave, he struck her on the left cheek with a metal pipe. Johnson temporarily lost her vision, and she thought her cheekbone was fractured. Johnson experienced great pain in her face.
 {¶ 4} For the next two hours Defendant refused to allow Johnson to leave the bedroom. Defendant repeatedly shook the metal pipe in Johnson's face and threatened to harm Johnson, to have her raped and killed by three men, if she pursued the charges against Newberry or called police on Defendant.
 {¶ 5} At approximately 7:50 a.m., Defendant's pager went off. A few minutes later, at 7:58 a.m., Defendant left the residence taking the cord from the telephone with him. As Defendant left, Johnson heard the metal pipe hit the concrete foundation of the house hear her bedroom window.
 {¶ 6} After Defendant left, Johnson found another phone cord and she called her friend, Susan Mullikin, who came to Johnson's apartment. Mullikin urged Johnson to call police, but Johnson was too frightened by Defendant's threats to do so. Johnson refused to go to the hospital because she had no insurance.
 {¶ 7} Johnson and Mullikin retrieved the metal pipe and went to Mullikin's house, where Johnson stayed and drank beer while Mullikin was at work. By the time Mullikin returned home, Johnson had decided to report the incident to police. Mullikin took Johnson to the police station at about 4:40 p.m. Johnson told police what had happened and gave them the metal pipe. Defendant was located and arrested at around 5:00 p.m. on April 3, 2001. A subsequent search of Defendant's vehicle turned up a pair of rubber gloves Johnson said Defendant wore during the assault.
 {¶ 8} Defendant was indicted on one count of felonious assault, R.C. 2903.11(A)(2), one count of intimidation of a crime victim, R.C.2921.04(B), one count of disrupting public services, R.C. 2929.04(A)(1), and one count of kidnapping, R.C. 2905.01(A)(3). Prior to trial, Defendant moved to suppress the evidence and statements he made to police. The trial court overruled Defendant's motion to suppress following a hearing. At the conclusion of a jury trial Defendant was found not guilty of disrupting public services, but guilty of all of the other charges. The trial court sentenced Defendant to concurrent prison terms totaling ten years.
 {¶ 9} Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 10} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS EVIDENCE AND STATEMENTS."
 {¶ 11} Defendant challenges the trial court's decision overruling his motion to suppress evidence of his statements to police. Defendant claims that the trial court erred when it failed to suppress his statements because he did not knowingly, intelligently, and voluntarily waive his Miranda rights. We disagree.
 {¶ 12} In order to combat the compulsion inherent in custodial interrogation and protect a suspect's Fifth Amendment privilege against self-incrimination, a valid waiver of Miranda rights must be knowing, intelligent and voluntary. Miranda v. Arizona (1966), 384 U.S. 436. To be knowing, intelligent and voluntary, the relinquishment of those rights must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception, and the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine (1986), 475 U.S. 412; State v. Dailey
(1990), 53 Ohio St.3d 88. A suspect's decision to waive his Miranda
rights is presumed to have been knowingly and voluntarily made, but the presumption may be rebutted by evidence demonstrating that his will was overborne and his capacity for self-determination was critically impaired because of coercion. Colorado v. Spring (1987), 479 U.S. 564, 574.
 {¶ 13} Det. Tackett testified at the suppression hearing that she interviewed Defendant at the police station on April 4, 2001, the day after his arrest. Det. Tackett told Defendant he was being interviewed about a burglary that had occurred at 241 S. Westview, the home of Jennifer Johnson. Defendant insisted, however, that was the home of Marty Newberry, not Jennifer Johnson.
 {¶ 14} Prior to asking him any questions, Det. Tackett read all five Miranda rights to Defendant, just as they appear on the pre-interview form. After reading each right to Defendant, Det. Tackett asked him if he understood that particular right. Defendant indicated each and every time that he understood that right. Det. Tackett had Defendant place his initials next to each right to signify that he understood it.
 {¶ 15} Likewise, Det. Tackett read the waiver of rights to Defendant. When Det. Tackett asked Defendant if he had any questions, Defendant responded: "No." Defendant then signed the waiver of rights. Throughout the process of going over the pre-interview form, Defendant repeatedly told Det. Tackett that he wanted to talk. Det. Tackett testified that Defendant did not appear to be under the influence of alcohol or drugs.
 {¶ 16} Defendant provided an oral statement. Defendant claimed that he was at Marty Newberry's house on April 3, 2001, to pick up some clothes for Newberry to wear to court, and that while there he saw Jennifer Johnson, but he denied hitting or restraining Johnson. At no time during the interview did Defendant request an attorney or ask that the interview stop.
 {¶ 17} Defendant argues that his waiver of rights was not knowing and intelligent because he could not comprehend those rights due to his inability to read or write. Low intellectual capacity, standing alone, does not demonstrate that defendant lacks the ability to comprehend and validly waive his Miranda rights. State v. Hill, 64 Ohio St.3d 313,1992-Ohio-43; State v. Dailey, supra; State v. Edwards (1987),49 Ohio St.2d 31. The totality of the circumstances must be considered. The facts and circumstances in this case demonstrate the Defendant was orally advised of all of his rights, including his right to have an attorney present during questioning and his right to stop answering questions at any time, and that Defendant stated that he understood each and every one. In their totality, the facts and circumstances do not support Defendant's claim.
 {¶ 18} Defendant also argues that his waiver of rights was not knowing, intelligent, and voluntary because he was deceived by police about the offenses concerning which he was interviewed. According to Defendant, he thought police were asking him about a burglary at Jennifer Johnson's house, not an assault and kidnapping of Johnson that occurred at Marty Newberry's house. This argument is disingenuous.
 {¶ 19} The record demonstrates that Defendant knew Jennifer Johnson was Marty Newberry's girlfriend, and that Defendant had previously seen Johnson at Newberry's house on Westview. More importantly, Defendant admitted being at the Westview residence on April 3, 2001, and having seen Johnson there at that time. Defendant testified at the suppression hearing that he knew Det. Tackett was asking him about a burglary, abduction and kidnapping involving Jennifer Johnson. Defendant was well aware that the residence Det. Tackett was talking about at which these events took place was the Westview residence, because Defendant continued saying that was Newberry's house, not Johnson's. In any event, it is not necessary that a suspect understand the nature of every offense of which he is suspected or all possible subjects of questioning in order for his waiver of Miranda rights to be valid. Colorado v. Spring, supra; State v. Campbell, 69 Ohio St.3d 38,1994-Ohio-492; State v. Smith (Oct. 5, 1994), Miami App. No. 93-CA-39.
 {¶ 20} This record amply demonstrates that Defendant understood all of his rights and the consequences of waiving those rights, and that his waiver was the product of his free and deliberate choice, not police coercion. Defendant's waiver of rights was constitutionally valid.
 {¶ 21} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 22} "THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF INTIMIDATION OF A CRIME VICTIM OR WITNESS."
 {¶ 23} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 24} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 25} Defendant was found guilty of violating R.C. 2921.04(B), which states:
 {¶ 26} "No person, knowingly, and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 27} The record in this case demonstrates that sometime after Jennifer Johnson called police and Marty Newberry was arrested for domestic violence on April 1, 2001, but before Newberry's arraignment on April 3, 2001, Johnson decided not to pursue charges against Newberry. That being the case, Defendant argues that he cannot have intimidated or hindered Johnson in the filing or prosecution of criminal charges against Newberry, and thus the evidence is legally insufficient to convict him for violating R.C. 2921.04(B).
 {¶ 28} The evidence presented at trial does not demonstrate that at the time Defendant committed this offense he was aware of Johnson's intention to not pursue the domestic violence complaint she had made against Newberry. Defendant entered Johnson's bedroom at 6:14 a.m. on April 3, 2001, struck Johnson in the face with a metal pipe, and then for the next two hours prevented Johnson from leaving while continually threatening to harm or kill her if she followed through with the charges against Newberry. Defendant's statements to Johnson clearly demonstrate that his purpose in threatening to harm her was to discourage Johnson from being involved in any criminal proceeding against Newberry. That conduct violates R.C. 2921.04. See: State v. Hummell (June 1, 1998), Morrow App. No. CA0851.
 {¶ 29} Viewing the evidence presented in this case, particularly the testimony by Jennifer Johnson, in a light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that all of the essential elements of intimidation of a crime victim were proved. Defendant's conviction for that offense is supported by legally sufficient evidence.
 {¶ 30} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 31} "THE JURY VERDICT SHOULD BE REVERSED BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 32} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v.Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v.Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 33} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 34} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley
(October 2, 1997), Champaign App. No. 97-CA-03, unreported.
 {¶ 35} Defendant argues that his conviction for intimidation of a crime victim is against the manifest weight of the evidence because the alibi witnesses he presented, his aunt, mother, and sister, testified that they saw Defendant during the time period Jennifer Johnson claims Defendant was with Johnson, restraining and threatening her.
 {¶ 36} Defendant's aunt, Ellen Anderson, testified that she saw Defendant outside his residence by his truck at 7:15 a.m., on April 3, 2001. Defendant's mother, Margaret Mitchum, testified that Defendant drove her to work at 7:40 a.m. that morning. Defendant's sister, Debra Buzard, testified that Defendant was at her store before 8:00 a.m. on April 3. Jennifer Johnson, the victim, testified that Defendant left her home at 7:58 a.m.
 {¶ 37} By its guilty verdict the trier of fact in this case, the jury, obviously chose to believe Jennifer Johnson's version of these events rather than the versions of Defendant's aunt, mother and sister. The credibility of the witnesses and the weight to be given to their testimony are matters for the jury to decide. State v. DeHass (1967),10 Ohio St.2d 230. We extend substantial deference to the factfinder's credibility determinations. State v. Vaughn (Nov. 9, 2001), Montgomery App. No 18581, 2001-Ohio-1757.
 {¶ 38} Defendant further alleges that Johnson's conduct immediately following this crime does not support his conviction. Though Johnson said she believed that Defendant had fractured her cheekbone with the metal pipe, Johnson did not go to a hospital for medical help when she could have. Moreover, despite Defendant's assault and his threats of further physical harm or death, Johnson did not immediately call the police. Johnson testified, however, that she did not immediately call police because she was afraid that Defendant would carry out his threats to have her raped and killed if she did so. Johnson also explained that she did not go to the hospital because she had no health insurance.
 {¶ 39} In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction for intimidation of a crime victim is not against the manifest weight of the evidence.
 {¶ 40} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 41} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL TO HIS PREJUDICE AND IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS."
 {¶ 42} Defendant complains that his trial counsel was ineffective for failure to file a Crim.R. 29 motion for acquittal on all of the charges. Defense counsel moved for a directed verdict of acquittal at the close of the State's case but only with respect to the disrupting public services charge.
 {¶ 43} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, the United States Supreme Court set forth the standard for judging claims of ineffective assistance of trial counsel:
 {¶ 44} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
 {¶ 45} "The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
 {¶ 46} "With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syllabus, 2. Accord: State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 47} The purpose of a Crim.R. 29 motion for acquittal is to test the legal sufficiency of the evidence. Dayton v. Rogers (1979),60 Ohio St.2d 162. Such a motion should not be granted where the evidence is such that reasonable minds can reach different conclusions as to whether each essential element of the crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. A trial court may grant a Crim.R. 29 motion only if reasonable minds could not but find reasonable doubt as to Defendant's guilt. State v. Apanovitch
(1987), 33 Ohio St.3d 19. In ruling on the motion, the trial court must construe the evidence most strongly in favor of the State. State v.Evans (1992), 63 Ohio St.3d 231.
 {¶ 48} With respect to the felonious assault charge, Jennifer Johnson testified under oath that Defendant hit her in the left cheek with a metal pipe. Johnson experienced great pain and momentarily lost her vision. Photographs taken by police depict a large bruise across Johnson's left cheek. Johnson's dentist testified that one of Johnson's teeth had shifted and that she had suffered nerve damage consistent with a traumatic injury to the left side of her face. This evidence is legally sufficient to demonstrate that Defendant knowingly caused physical harm to Johnson by means of a deadly weapon, in violation of R.C. 2903.11(A)(2). Defense counsel's failure to move for a Crim.R. 29 acquittal does not constitute deficient performance when there is no reasonable possibility the motion would succeed.
 {¶ 49} Regarding the kidnapping charge, Johnson testified that for nearly two hours Defendant forced her to remain in the bedroom and would not let her leave her home. During this time Defendant waived the metal pipe in Johnson's face, threatening her with physical harm and death if she pursued the domestic violence charges against Marty Newberry. This evidence is legally sufficient to demonstrate that Defendant restrained Johnson's liberty by threats of physical harm in order to terrorize her into not pursuing criminal charges against Newberry, in violation of R.C. 2905.01(A)(3). On this record a Crim.R. 29 motion for acquittal had virtually no chance of success, and defense counsel did not perform deficiently in failing to file that motion.
 {¶ 50} With respect to the intimidation of a crime victim, in overruling Defendant's second assignment of error we concluded that the evidence, construed in favor of the State was legally sufficient to prove that Defendant forcibly and by threats of physical harm, attempted to intimidate or hinder Johnson in filing or prosecuting criminal charges against Marty Newberry, in violation of R.C. 2921.04(B). Defense counsel does not perform in a deficient manner by failing to file a motion for acquittal when that motion has virtually no reasonable chance of success. Ineffective assistance of counsel has not been demonstrated.
 {¶ 51} Defendant's fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 52} "THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING APPELLANT ON THE ALLIED OFFENSES OF FELONIOUS ASSAULT AND KIDNAPPING."
 {¶ 53} Defendant claims that he cannot be convicted and sentenced for both kidnapping and felonious assault because they are allied offenses of similar import per R.C. 2941.25. Defendant implicitly acknowledges that he did not raise this issue in the trial court, but he argues that this error qualifies as "plain error." State v. Hipple (May 21, 1999), Miami App. No. 98CA49.
 {¶ 54} R.C. 2941.25 provides:
 {¶ 55} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 56} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 57} In Ohio, R.C. 2941.25 is the basis for determining whether cumulative punishments imposed in a single trial for more than one offense arising out of the same criminal conduct violate the federal and state constitutional provisions against double jeopardy. State v. Rance,85 Ohio St.3d 632, 1999-Ohio-291. The statute manifests the General Assembly's intent to permit cumulative punishments for the same conduct in appropriate cases. Id.
 {¶ 58} A two step test is employed to determine whether two offenses are allied offenses of similar import. First, the statutory elements of the offenses are compared in the abstract. Id. If the elements do not correspond to such a degree that commission of one of the offenses will result in commission of the other, the offenses are of dissimilar import, and under R.C. 2941.25(B) and the court's inquiry is at an end. Then, multiple convictions and sentences are permitted. Id.
 {¶ 59} Defendant was found guilty of felonious assault in violation of R.C. 2903.11(A)(2) which provides:
 {¶ 60} "No person shall knowingly cause or attempt to cause physical harm to another . . . by means of a deadly weapon."
 {¶ 61} Defendant was also convicted of kidnapping in violation of R.C. 2905.01(A)(3) which states:
 {¶ 62} "No person by force, threat, or deception . . . shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following reasons:
 {¶ 63} "To terrorize, or to inflict serious physical harm on the victim or another."
 {¶ 64} A comparison of the elements of these two offenses readily reveals that commission of the one offense does not automatically result in commission of the other. One can commit felonious assault without also committing kidnapping, and vice versa. Thus, these two offenses are of dissimilar import and Defendant may be convicted and sentenced for both.Rance, supra; R.C. 2941.25(B).
 {¶ 65} Defendant's fifth assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, J. AND YOUNG, J., CONCUR.