OPINION
{¶ 1} Defendant, Tony Isaac, appeals from his conviction andsentence for the forcible rape of a child under ten years ofage.
 {¶ 2} Defendant was indicted on thirteen counts of forciblyraping a child under ten years of age. R.C. 2907.02(A)(1)(b).Those offenses require mandatory life sentences. Defendant wasalso indicted on seven counts of gross sexual impositioninvolving a child under ten years of age. R.C. 2907.05(A)(4).Defendant requested competency and sanity evaluations, and fileda written plea of not guilty by reason of insanity. After bothparties subsequently stipulated to Dr. Susan Perry-Dyer'scompetency evaluation report, the trial court found Defendantcompetent to stand trial.
 {¶ 3} Defendant filed a motion to suppress statements he madeto police during an interview at the police station because thosestatements were not preceded by Miranda warnings. Following ahearing, the trial court concluded that Defendant's statementswere voluntary and that Defendant was not in custody during theinterview, and thus there was no need for Miranda warnings. Thetrial court overruled Defendant's motion to suppress hisstatements.
 {¶ 4} Defendant withdrew his not guilty by reason of insanityplea and, pursuant to a plea agreement, entered pleas of nocontest to three counts of forcibly raping a child under tenyears of age. In exchange, the State dismissed the remainingcharges. Both parties also agreed that Defendant's threemandatory life sentences would be served concurrently.
 {¶ 5} The trial court accepted Defendant's no contest pleasand found him guilty. The trial court imposed concurrent lifesentences on each of the rape charges as recommended by theparties. The trial court also designated Defendant a sexualpredator.
 {¶ 6} Defendant has now timely appealed to this court from hisconviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 7} "The trial court committed prejudicial error by failingto suppress appellant's statements which were illegally obtainedand the product of police coercion."
 {¶ 8} Defendant claims that the trial court erred in refusingto suppress the statements he made during an interview at thepolice station because police did not advise him of his Mirandarights, and because his statements were not voluntary.
 {¶ 9} When considering a motion to suppress, the trial courtassumes the role of the trier of facts and, as such, is in thebest position to resolve conflicts in the evidence and determinethe credibility of the witnesses and the weight to be given totheir testimony. State v. Retherford (1994),93 Ohio App.3d 586. The court of appeals must accept thetrial court's findings of fact if they are supported by competent,credible evidence in the record. Id. Accepting thosefacts as true, the appellate court must then independently determine, asa matter of law and without deference to the trial court's legalconclusion, whether the applicable legal standard is satisfied.Id.
 {¶ 10} The facts found by the trial court are as follows:
 {¶ 11} "Officer Dennis Evans of the Ashland Police Departmentwas requested to be involved in an interview of the Defendantregarding allegations of sexual misconduct. The Defendant wascontacted through his cell phone and asked to come to the policedepartment for an interview. The Defendant voluntarily came tothe police department and was escorted back to the interviewroom. The Defendant asked why he was there and the officeradvised him of the allegations, the Defendant smiled and laughedand indicated that he had been through this before. At thebeginning of the interview the Defendant was not advised of hisMiranda rights. However, he was advised he was not under arrestand he could leave the interview room at any time. The Defendantwas clear in his understanding of the fact that he was not underarrest. During the course of the interview the Defendant was notthreatened in any way, he was not offered any leniency, promises,or other inducements to make a statement. The door was not lockedand during the interview the Defendant was left alone once. TheDefendant demonstrated that he had a background with the militarypolice which the Court finds adds to an understanding of theprocess he was undergoing at that time. The interview process wasapproximately an hour. The officer was dressed in plain clothesduring the course of the interview and the Court finds that theinterview was easy, casual and friendly in its demeanor.Detective Major of the Ashland Police Department continued theinterview and during her interview, again, no offers of leniencywere made, no promises made, and no threats to the Defendant weremade, and further the Defendant was again advised he was notunder arrest during the interview process. Again, the door wasunlocked and the Defendant was aware of the fact he could leaveat any time.
 {¶ 12} "During the interview process the Defendant appearedvery normal and did not make any requests to receive anythingduring the interview. Detective Major, likewise, was dressed incivilian clothes and the interview with her was subdued andnon-confrontational. At the conclusion of the interview thedetectives obtained a statement from the Defendant and afterconsulting with their supervisor, the Defendant was later placedunder arrest."
 {¶ 13} Based upon these facts the trial court found thatDefendant was not in custody during his interview at the policestation and therefore Miranda warnings were not required. Weagree. In State v. Hopfer (1996), 112 Ohio App.3d 521, 545-546,this court observed:
 {¶ 14} "The United States Supreme Court in Miranda v.Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612,16 L.Ed.2d 694, 706, defined a custodial interrogation as`questioning initiated by law enforcement officers after a personhas been taken into custody or otherwise deprived of his freedomof action in any significant way.' Custodial interrogation ismeasured by an objective standard, not by the subjectiveunderstanding of the suspect.
 {¶ 15} "`A policeman's unarticulated plan has no bearing onthe question whether a suspect was "in custody" at a particulartime; the only relevant inquiry is how a reasonable man in thesuspect's position would have understood his situation.'Berkemer v. McCarty (1984), 468 U.S. 420, 442, 104 S.Ct. 3138,3151, 82 L.Ed.2d 317, 336."
 {¶ 16} The facts in this case are similar to those in Statev. Mason, 82 Ohio St.3d 144, 153-154, 1998-Ohio-370, wherein theOhio Supreme Court stated:
 {¶ 17} "On February 10, Detective Dennis Potts stopped byMason's house, drove him to the police station, asked himquestions for eighteen minutes, then drove him home after drivingby the Youngs' residence. On February 12, Potts again stopped atMason's house and asked whether he would go to the police stationfor further interviews. Mason again voluntarily agreed. Theensuing conversations, all recorded, began at 11:29 a.m. andlasted until 3:24 p.m. Mason was cooperative and talked freelythroughout.
 {¶ 18} "Around 4:00 p.m., police advised Mason of his Mirandarights, and his parole officer (who had secretly observed theinterview) arrested him for violating the conditions of hisparole by drinking and associating with felons. After Mason askedfor an attorney, police stopped further questioning.
 {¶ 19} "Until he was told that he was under arrest, detectivesnever told Mason that he could not leave, and he was neverhandcuffed. Mason acknowledged that he was left alone two orthree times, the door was not locked, and that the first time heunderstood that he would be arrested and could not leave wasaround 4:00 p.m.
 {¶ 20} "Only a custodial interrogation triggers the need for aMiranda rights warning. Berkemer v. McCarty (1984),468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317. The evidence supports thetrial court's finding that Mason was not in custody whenquestioned.
 {¶ 21} "The fact that a suspect is being interviewed at apolice station does not, per se, require a Miranda rightswarning. Rather, the determination as to whether a custodialinterrogation has occurred requires an inquiry into `how areasonable man in the suspect's position would have understoodhis situation.' Berkemer v. McCarty, 468 U.S. at 442,104 S.Ct. at 3151, 82 L.Ed.2d at 336. `[T]he ultimate inquiry is simplywhether there is a "formal arrest or restraint on freedom ofmovement" of the degree associated with a formal arrest.'California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279, quoting Oregon v. Mathiason(1977), 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714,719."
 {¶ 22} Because Mason was not in custody, police were notrequired to advise him of his Miranda rights. See Oregon v.Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714;California v. Beheler, 463 U.S. at 1123, 103 S.Ct. at 3519,77 L.Ed.2d at 1278; State v. Biros (1997), 78 Ohio St.3d 426, 440,678 N.E.2d 891, 904.
 {¶ 23} In this case Defendant voluntarily drove himself to thepolice station at the request of police. The police interview ofDefendant lasted only two hours. During that time Defendant wasseated in an interview room. The door was closed but not locked,and Defendant was not handcuffed. Both Officer Evans and Det.Mager each told Defendant that he was not under arrest and wasfree to leave at anytime. Defendant assured the officers heunderstood that he was free to leave. The interview was conductedin a reasonably relaxed, non-confrontational atmosphere. NeitherOfficer Evans nor Detective Mager were armed, and both worecivilian clothes rather than a police uniform. No threats orpromises were made to Defendant.
 {¶ 24} At various times during the interview the door to theinterview room was open and police left Defendant alone in theroom. Defendant was not arrested, and police never expressed anysuch intention until the conclusion of his interview with Det.Mager, after Defendant had given a full and detailed confessionabout his sexual conduct with two young female victims.
 {¶ 25} We conclude that a reasonable person in Defendant'sposition during this police interview would have understood thathe was free to walk away from the questioning by police andleave, despite being at the police station. Mason, supra.
 {¶ 26} The mere fact that Defendant confessed to the crimeduring the interview, leading to his arrest at the conclusion ofthe interview, does not convert a non-custodial interview intoone which is custodial. Id.; Oregon v. Mathiason (1977),429 U.S. 495. Defendant was not in custody during his interview withpolice, and therefore police did not violate his rights byfailing to give him Miranda warnings before questioning.Mason, supra.
 {¶ 27} The trial court also concluded that Defendant'sstatements to police were voluntary, there being no improperpolice coercion or inducements. We agree.
 {¶ 28} "As a threshold matter, `coercive police activity is anecessary predicate to finding that a confession is not voluntarywithin the Fifth Amendment, on which Miranda was based.' Statev. Dailey (1990), 53 Ohio St.3d 88, 91-92, 559 N.E.2d 459, 463,citing Colorado v. Connelly (1986), 479 U.S. 157, 170,107 S.Ct. 515, 523, 93 L.Ed.2d 473, 486. Without police coercion,circumstances such as the defendant's minority or low I.Q. do notnegate the voluntariness of the confession. Dailey at 92,559 N.E.2d at 463. In deciding whether Hopfer's confession wasinvoluntary, `the court should consider the totality of thecircumstances, including the age, mentality, and prior criminalexperience of the accused; the length, intensity, and frequencyof interrogation; the existence of physical deprivation ormistreatment; and the existence of threat or inducement.'(Emphasis sic.) State v. Edwards (1976), 49 Ohio St.2d 31,40-41, 3 O.O.3d 18, 23, 358 N.E.2d 1051, 1059, citing Brown v.United States (C.A. 10, 1966), 356 F.2d 230, 232. Promises ofleniency by the police, such as probation upon conviction, areimproper and render an ensuing confession involuntary. State v.Arrington (1984), 14 Ohio App.3d 111, 116, 14 OBR 125, 130-131,470 N.E.2d 211, 216-217. However, `admonitions to tell the truthdirected at a suspect by police officers are not coercive innature.' State v. Wiles (1991), 59 Ohio St.3d 71, 81,571 N.E.2d 97, 112, State v. Cooey (1989), 46 Ohio St.3d 20, 28,544 N.E.2d 895, 908." Hopfer, supra, at 548.
 {¶ 29} The totality of the facts and circumstances in thiscase demonstrate that Defendant's statements were voluntary.Defendant was thirty-three years old and had completed twelveyears of school. He had been a military policeman for ten years,and thus had familiarity and experience with policeinterrogations. The questioning only lasted two hours, and duringwhich time Defendant never requested anything, includingrefreshments or a bathroom break. Defendant was never threatenedor physically mistreated, nor were any promises or inducementsoffered in exchange for his statements. On these facts, we cannotfind that Defendant's free will was overcome by the behavior ofthe police. Defendant's statements were therefore voluntary andadmissible.
 {¶ 30} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 31} "The trial court accepted a `no contest' plea withoutadvising appellant of a serious consequence, viz, his beingclassified as a sexual predator and did not cure this failing bya passing reference at a subsequent sentencing hearing."
 {¶ 32} Defendant complains that the trial court violatedCrim.R. 11(C)(2) when it accepted his no contest pleas withoutfirst advising him that upon conviction for a sexually orientedoffense he would be placed into one of three categories as asexual offender, with applicable reporting and registrationrequirements per Chapter 2950 of the Ohio Revised Code. Accordingto Defendant, the trial court's failure to advise him of thisserious consequence of his pleas rendered those pleas invalidbecause they were not entered knowingly, intelligently andvoluntarily. We disagree.
 {¶ 33} We have previously held that because the registrationand reporting requirements imposed by Chapter 2950 of the OhioRevised Code upon defendants who are convicted of a sexuallyoriented offense are remedial and not punitive in nature, thetrial court is not obligated per Crim.R. 11(C)(2) to explainthose requirements to a defendant before accepting his or herplea of guilty or no contest. State v. Hill (July 24, 1998),Montgomery App. No. 16791. Accord: State v. Perry (November 26,2003), Cuyahoga App. No. 82085, 2003-Ohio-6344.
 {¶ 34} Furthermore, the record in this case affirmativelyrefutes the notion that Defendant would not have entered his nocontest pleas had he known that his conviction for a sexuallyoriented offense would result in a sexual offender classificationwith applicable registration and reporting requirements. At thecommencement of the sentencing hearing, which occurred just threedays after Defendant had entered his pleas, the court explainedto Defendant the sexual offender classification procedure thatwould take place, including the various categories and applicablereporting, registration, and community notification requirements.After ascertaining that Defendant understood these matters, thetrial court specifically asked Defendant whether he still wantedthe court to accept his no contest pleas, knowing that this wouldbe yet another consequence of his pleas. Defendant replied: "Yes,sir." Clearly, the knowing and voluntary character of Defendant'spleas was not impacted by his sexual offender classification.
 {¶ 35} The second assignment of error is overruled. Thejudgment of the trial court will be affirmed.
 Fain, P.J. and Brogan, J., concur.