{¶ 116} I disagree. Knight's confession was improperly induced, involuntary and inadmissible as a matter of law. First, I would find that Knight was in custody for purposes of Miranda. Although he wasMirandized, Knight clearly invoked his right to speak with an attorney and was denied that fundamental right in violation of the Ohio and U.S. Constitutions. Furthermore, the "torture of fear" was introduced by Detective *Page 17 
Eggers in order to overbear his will by threats of the electric chair. The electric chair was not a legal possibility, as lethal injection has been the only means of execution available to the State of Ohio since 2001. R.C. § 2949.22, 2001 H 362 eff. 11-21-01.
 {¶ 117} I must note that there are a number of disturbing facts revealed by this record that should not be overlooked. First, the printed transcript of Knight's confession provided by the State to defense counsel, as well as part of this record on appeal, reveals that the videotaped confession played at the motion to suppress hearing was not completely and accurately transcribed. Conspicuously absent from the printed text is Knight's second request for counsel. This is the only portion that appears to be redacted. This glaring omission was not explained by the State, addressed by defense counsel, nor was it addressed by the court in any oral or written findings. Secondly, although Knight raised genuine issues on the subject of "custody" and "violation of his right to counsel" in the hearing on the motion to suppress, the court failed to address any of these issues in a written opinion analyzing the facts and applicable law. I'd note also that the cross-examination of officers, during this very critical and non-frivolous suppression hearing, was minimal and deficient in many respects.
 {¶ 118} It is difficult to overlook the fact that Knight was twiceMirandized in deciding the issues of custody and voluntariness. WhyMirandize Knight at all if he was not in custody? This was not a routine nor nonintrusive inquiry by law enforcement. Although Knight initially came to the station voluntarily along with his mother, he was transported to the station by an officer in a police vehicle. He was then separated from his mother and interviewed by three members of law enforcement in a small room. Knight was told he was the only suspect. The tenor of this interrogation was never *Page 18 
simply non-accusatory, but, in fact, focused on Knight as the suspect. When Knight requested a break, this request was initially ignored and questioning continued. Although the majority characterizes Knight as intelligent and experienced with the police, the pre-sentence report reveals his criminal history prior to this arrest was minimal, primarily misdemeanor convictions, and his education level was twelve (12) years with some limited military service. The record herein supports a finding that Knight's intellect and level of sophistication was considerably lower than that of his interrogators.
 {¶ 119} I recognize that the majority, based in part on law from the State of California, dismisses the second invocation for counsel as both equivocal and one made in a non-custodial setting. Thus, they conclude that any violation of the right to counsel is just one factor bearing upon voluntariness, not one which is dispositive. However, if Knight was, in fact, in custody, the analysis is entirely different. The ultimate inquiry is whether there was a formal arrest or a restraint on freedom of movement to the degree associated with a formal arrest.State v. Isaac, Greene App. No. 2003-CA-91, 2004-Ohio-4683, citingCalifornia v. Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, quoting Oregon v. Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711.
 {¶ 120} In determining whether a person is in custody, courts have considered certain factors to be relevant. These include the length of the detention, the perception and expectation of the detainee as to his freedom to leave at the conclusion of the interrogation, the atmosphere of the interrogation, and whether the interview is in a public or private place. See Berkemer v. McCarty (1984), 468 U.S. 420; State v.Warrell (1987), 41 Ohio App.3d 286, 534 N.E.2d 1237. This court has considered factors such as the location of the questioning (at home versus in the more restrictive *Page 19 
environment of a police station), was the defendant a suspect at the time the interview began, was the defendant's freedom to leave restricted in any way, was the defendant handcuffed or told he was under arrest, were threats made during the interrogation, was the defendant physically intimidated during the interrogation, did the police verbally dominate the interrogation, the defendant's purpose for being at the place where questioning took place, and whether police took any action to overpower, trick or coerce the defendant into making a statement.State v. Estepp (Nov. 26, 1997), Montgomery App. No. 16279.
 {¶ 121} A person may voluntarily go to the police station for questioning and still be found to be in custody. See State v.Robinson (1994), 98 Ohio App.3d 560, 649 N.E.2d 18; (holding defendant found to be in custody where he drove himself to the station house after receiving telephone message from police that he was wanted for questioning, where defendant was taken directly to detective bureau and questioned, Mirandized and advised he might be charged with a crime, where the crime which he was told he could be charged with was different than the crime about which he was interrogated).
 {¶ 122} The following facts lead me to the conclusion Knight was in custody:
 {¶ 123} (1) The interview took place in the restrictive environment of a police station with three members of law enforcement in a small room;
 {¶ 124} (2) Knight was a suspect, in fact, the only suspect according to Detective Eggers at the time the interview began;
 {¶ 125} (3) Threats of the electric chair were made more than once;
 {¶ 126} (4) The tenor of the interview changed when one officer left the *Page 20 
room and a Detective Eggers entered. Thereafter, Detective Eggers clearly dominates the interview;
 {¶ 127} (5)When Knight asked "May I find an attorney?" rather than respond "yes" which is the correct legal response, the detective answers "Do what?" . . . "By Whom?" These responses were calculated to avoid the intervention of counsel, post Miranda.
 {¶ 128} (6) An initial request for a break was ignored, the interview continued. The request for counsel was ignored, the interview continued. Thus, law enforcement communicated to Knight that his requests would be ignored, and he was subject to their decision-making, including his freedom of movement.
 {¶ 129} Having determined that Knight was in custody, I would also find that his statement was involuntary. I would hold that Knight's confession was taken in violation of his Fifth Amendment rights under the Ohio and U.S. Constitutions.
 {¶ 130} The Fifth Amendment right against self-incrimination can be waived, but the waiver must be voluntary. State v. Petitjean (2000),140 Ohio App.3d 517, 748 N.E.2d 133. The decision to waive is voluntary absent a showing that his will was overborne because of coercive police conduct. State v. Otte, 74 Ohio St.3d 555, 562, 660 N.E.2d 711,1998-Ohio-108, citing Colorado v. Connelly (1986), 479 U.S. 157,107 S.Ct. 515. The due process inquiry of voluntariness is a separate inquiry from that required for Miranda custody and takes into consideration all of the circumstances surrounding the confession, including the characteristics of the accused and the details of the interrogation. Dickerson v. United States (2000), 530 U.S. 428, 434,120 S.Ct. 2326. Ohio courts consider circumstances such as the age, mentality and prior criminal *Page 21 
experience of the accused, the length, intensity and frequency of the interrogation, the existence of physical deprivation or mistreatment, and the existence of threat of inducement. State v. Bays (Jan. 30, 1998), Greene Co. App. No. 95-CA-118, citing State v. Edwards (1976),49 Ohio St.2d 31, 358 N.E.2d 1051. A confession may be involuntary whether or not Miranda warnings are required. State v. Petitjean (2000),140 Ohio App.3d 517, 748 N.E.2d 133, citing Dickerson at 434. The State has the burden of proving the voluntariness of the confession by a preponderance of the evidence. State v. Gumm, 73 Ohio St.3d 413, 429,653 N.E.2d 253, 1995-Ohio-24.
 {¶ 131} While law enforcement may lie to a suspect to a certain extent during questioning, they may not misstate the law. State v.Arrington (1984), 14 Ohio App.3d 111, 470 N.E.2d 211. Repeated references, (three times), to the electric chair were a misstatement of the law; this is just the kind of reference to the "torture of fear" that courts condemn. Although Knight may have faced the death penalty by lethal injection, the chair certainly conjures up other images of death that the State of Ohio did not have the legal ability to implement. It was a complete mischaracterization of the method of punishment available to the State,
 {¶ 132} and the clear implication communicated to Knight was that a "confession" may result in avoidance of the electric chair.
 {¶ 133} We have previously addressed the use of threats by police in eliciting confessions. State v. Petitjean (2000), 140 Ohio App.3d 517,748 N.E.2d 133; State v. Kerby, Clark App. No. 03-CA-55, 2007-Ohio-187. In Petitjean, the defendant was found not to be in custody and was not given Miranda warnings. During questioning regarding a murder, the police officers made statements that he could receive the *Page 22 
electric chair, that he needed to explain his involvement or he would "go bye-bye for a big long * * * time-for life, or you lose your life."Id. at 529. They also implied he might be able to successfully argue self-defense or involuntary manslaughter and be out of jail in six months, or "* * *if you want to work with us and work with yourself * * * you'd probably get two years of probation." Id. at 530. This court reversed the trial court's ruling and held that the confession was involuntary. In doing so, we focused on the threats and promises of leniency made to Petitjean. Though the outcomes advanced by the police were technically possible (anything from probation to the death penalty, depending on Petitjean's statement) and were presented in the form of possibilities or probabilities rather than certainties, the false hope created by the possibility of probation together with the fear created by the threats of death or life-imprisonment were coercive in nature and overbore Petitjean's will. His subsequent waiver of his Fifth Amendment rights was involuntary. Id. at 533. We went on to state that "* * * the more aggressive police become in questioning suspects, the greater the risk that a resulting confession is involuntary. Thus, it is the sworn obligation of the courts to prevent the use of the confession in the defendant's prosecution by suppressing the confession and any other evidence derived from it." Id. at 534. Although there was no explicit promise of leniency portrayed by the record herein, it is certainly implied, and the threats of the chair and disregard of Knight's second request for counsel, in my view, render any subsequent statements inadmissible.
 {¶ 134} Similarly, in Kerby, a 17-year-old suspect was taken to the police station for interrogation by the Springfield Police Dept. at approximately 2:30 a.m. regarding a fatal shooting which occurred in the course of a robbery. During the course *Page 23 
of the interview, the police made several statements to Kerby that he would receive the death penalty for his involvement in the shooting, and at one point implied that he would receive leniency if they could show the prosecutor he was sorry for what happened. This court found the confession to be involuntary, citing the promises of leniency and the fact that the suggestion that Kerby could face the death penalty for his involvement in the shooting was "deceptively misleading and a misstatement of the law" since the death penalty was not available because of his age. Kerby at 12. Thus, in Knight's case, I would find the threat of the electric chair "deceptively misleading and a misstatement of the law."
 {¶ 135} At least one court has found a confession to be involuntary when a suspect's request for an attorney was ignored followingMiranda warnings, despite findings that the suspect was not in custody and his right to an attorney had not yet attached. State v. Arnold
(March 30, 2000), Athens App. No. 99CA37. In Arnold, the trial court found that in addition to the suspect's low intellect and lack of prior experience with the law, the police officer employed deceit, threats and inducement in eliciting a confession. Specifically, the police read Arnold his Miranda rights prior to questioning, even though he was not in custody at the time, which caused Arnold to believe he had a right to an attorney. In upholding the trial court's ruling, the appellate court stated the following:
 {¶ 136} "[The police officer] erroneously informed appellee that he had the right to an attorney present during questioning. When appellee requested an attorney, [the police officer] reiterated that appellee had `every right to have a lawyer present * * * while * * *being questioned' yet continued talking with appellee. Such action by a police *Page 24 
officer is not only coercive but indicates to a suspect that his rights will not be respected by the police and the only way to terminate the interrogation is to cooperate with police." Id. at 4.
 {¶ 137} In addition to incorrectly advising Arnold that he had a right to an attorney, the police officer also made statements that tended to imply that Arnold would receive leniency if he confessed and that implied the police had the authority to ensure Arnold was incarcerated for a long period of time. Id.
 {¶ 138} Given the similarity to the above-mentioned cases, I'd find the tactics utilized by law enforcement herein to be coercive in nature, misleading and violative of Knight's constitutional rights. I cannot say that the "totality of circumstances" render Knight's statements voluntary. Knight was denied his right to counsel when he "politely" asked "may I find representation?" This was the second time Knight brought up his desire for counsel after initially indicating he was "nervous" about signing the Miranda form. I concede Knight's first request for a lawyer was equivocal, but the second request cannot be morphed by law enforcement into equivocation by further questions to Knight. There is nothing unclear about "may I find representation"? This request is not ambiguous nor is it equivocal. This request is not susceptible to more than one interpretation. A defendant should not be required to forcefully demand the assistance of counsel before an effective invocation of the right to counsel is established. Knight's request was sufficiently clear that a reasonable officer would have understood the statement to be a request for counsel requiring termination of the interrogation. No clarification of this request was required and law enforcement should not be permitted to play stupid and answer snidely with "do what?" and "by whom?" *Page 25 
Knight's request for representation can "reasonably be construed as an expression of a desire for an attorney's assistance." See Davis v.United States (1994), 512 U.S. 452, 114 S.Ct. 2350. As Justice Souter noted in Smith v. Illinois (1984), 469 U.S. 91, 105 S.Ct. 490, a suspect need not "speak with the discrimination of an Oxford don," nor would I add, should he be penalized by asking politely for representation. Knight's decision to deal with the officers through counsel should have been scrupulously honored. The follow-up questions by Detective Eggers herein were not for clarification, but rather designed to frustrate Knight's subjectively held desire for counsel, as well as his right to the assistance of counsel.
 {¶ 139} Unlike the majority, I would find that Knight's capacity for self-determination was critically impaired because of police coercive conduct, and that his statements were obtained in violation of his constitutional rights. Any suggestion that he had a moral compulsion to confess can only be gleaned from this record after Knight was three times threatened with the electric chair and deprived of his right to speak with a lawyer. The trial court's admission of statements Knight made, while in custody, after an unequivocal request for counsel, cannot be characterized as harmless error on this record. Thus, his conviction must be reversed and he must be given a new trial absent the constitutionally tainted evidence.
 {¶ 140} Accordingly, I would sustain the sole assignment of error and reverse for further proceedings. *Page 1